### No. 24445

### Henry Constantine v. The People of the State of Colorado
(495 P.2d 208)

Decided March 27, 1972. Opinion modified and as modified rehearing denied April 17, 1972. Rehearing on modification denied April 24, 1972.

18

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Kenneth J. Russell, Deputy, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, E. Ronald Beeks, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Constantine, and two others, were charged with unnatural carnal copulation and conspiracy to commit the same. At the time of the alleged offenses, the defendant, the other participants, and the victim, were fellow inmates at the Denver County Jail. A jury found the defendant not guilty of committing the act itself, but guilty of conspiracy to commit the act. The defendant urges reversal on the basis of several assignments of error, one of which is meritorious and requires reversal and remand for a new trial.

I.

The trial court allowed the two detectives, who interrogated the defendant, to testify concerning a statement made to them by the defendant, and also admitted into evidence People's Exhibit G, a memorandum written by one of the detectives. It set forth the contents of the defendant's oral statement. Defendant's statement was made at a time when he was represented by counsel on another matter, but counsel was not present and had not been contacted when the statement was made. The defendant argues that it was improper for these detectives to interrogate him prior to contacting his attorney when the detectives knew or should have known that he was represented by an attorney. The defendant also maintains that the People failed to show a knowing and intelligent waiver by him of the right to counsel.

The alleged crime occurred on the evening of December 15, 1968. On the morning of December 17th, the two detectives interviewed the defendant at the jail. The defendant was not arraigned pursuant to Colo. R. Crim. P. 5 until December 21st. In the statement, the defendant admitted

having a confrontation with the alleged victim over a pack of cigarettes, and striking him three times, but denied that anything else occurred.

The trial court held a *Jackson-Denno* hearing to determine the admissibility and voluntariness of the statement. The evidence adduced at this hearing is quite conflicting. The defendant testified that he requested to see his attorney before talking to the detectives and that his attorney was at that exact moment in the next interview room talking to another client. The defendant testified that one of the detectives replied, "No, you can't talk to your attorney. . . . You are going to talk to us first before you talk to anyone." This detective testified: that he did not know whether the defendant was represented by counsel; that he did not know whether the defendant had been brought before a county judge at the time; that he made no effort to find out the answers to these questions; and that he could not remember whether the defendant requested counsel or said that his attorney was in the next room. The other detective testified that at the time of the interview he knew that the defendant was represented by counsel, but that no effort was made to contact defendant's counsel before interrogating him. He also stated that he did not remember whether the defendant had requested an attorney or not.

The record contains a standard advisement and waiver of rights form. The defendant testified that this form was "thrown" in front of him by one of the detectives who told him to sign it, saying "We want to get you just like we got you on the other one." The defendant further testified that the form was not read to him by the detectives; and that while he read the form himself he did not understand it; and that he signed it only because he was scared. One of the detectives testified that "I believe I read that [advisement form] to him," and that the statement was voluntary. The other detective was uncertain what language the defendant used in making his alleged waiver of counsel.

At the conclusion of this hearing, the trial court, without making any findings of fact, ruled that, as a matter of law,

the statement should not be suppressed. The trial court premised this ruling on a statement to the effect that the issue of voluntariness and whether the defendant made a knowledgeable waiver of his right to counsel are matters for the jury to determine. In this respect, the trial court stated that the matter of the defendant's comprehension of constitutional rights is for the jury. The statement was thereupon allowed to go to the jury which was instructed on the matters of admissibility and voluntariness as they might affect the weight and credibility of the testimony.

■■ The trial court's ruling and its statements in support thereof are erroneous. The matter of comprehension of constitutional rights is the very essence of the broader determination of voluntariness and hence, admissibility. These are issues which, in the first instance, must be determined by the trial court at the *in camera* hearing. *Sims v. Georgia,* 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593; *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

■■ Regardless of whether or not the police ignored the fact that the defendant had an attorney in another case, when they questioned him in this case, the threshhold question is whether, as a matter of law, the defendant made a knowing and intelligent waiver of his right to counsel before he made any statement to the police. It is our view, and the trial court should have found, that the facts here clearly show a non-compliance with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 as set forth in the following language:

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." 384 U.S. 475.

"An individual need not make a preinterrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a

waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given." 384 U.S. 470.

In *Reed v. People,* 171 Colo. 421, 467 P.2d 809, we adopted the reasoning of *Bond v. United States,* 397 F.2d 162 (10th Cir. 1968) wherein it was said "We do not read *Miranda* to hold that 'an express declination of the right to counsel is an absolute from which, and only which, a valid waiver can flow.'"

However, in Reed, the qualifications for establishing waiver are spelled out as follows:

"Cases in which it is clear that the warnings have been given must be considered on their own facts in order to determine the question of waiver. [citations omitted] Strong and unmistakable circumstances may upon occasion establish an effective equivalent to an express waiver. To constitute such a waiver, the attendant facts must show clearly and convincingly that the accused did relinquish his constitutional rights knowingly, intelligently and voluntarily."

■ The facts in this case stand as an example of a lack of clear and convincing evidence that the accused waived his constitutional rights knowingly, intelligently, or voluntarily. Also, when we consider the evident lack of education and legal sophistication of the defendant coupled with the conflicting and ambiguous testimony of the two detectives, we cannot conclude that there was an effective waiver by the defendant of his right to counsel. It was therefore reversible error to admit the detectives' testimony relating to defendant's statement and People's Exhibit G based thereon.

We find no merit in the People's argument that a distinction must be made where the questioning concerns the very case for which counsel has been appointed and those cases where the defendant is in custody and has had counsel appointed in relation to one offense, but the questioning concerns a separate offense. Such a distinction was characterized as "too minor and shadowy to justify a departure from the well-considered conclusions of *Miranda. . . .*" in *Mathis v.*

*United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381. *See* also *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246.

In appraising the facts as shown from the evidence on the matter of waiver, it is also of importance to briefly discuss the problem posed in this case regarding the fact that this defendant had an attorney who was representing him in another criminal case. We are confronted here with the testimony of the defendant and statements of his attorney that he was in the next room at the time the statement was given and yet he was not advised that the questioning was to take place. Furthermore, one of the detectives unequivocally stated that he did not make any effort to determine whether the defendant had counsel at the time of questioning or had been arraigned before a county judge and advised of his rights. In this case, these factors serve only to further indicate that the defendant did not make a knowing, intelligent, and voluntary waiver of his right to counsel at the time of interrogation.

## II.

The defendant's second contention — that the trial court erred in permitting the complaining witness to make an in-court identification of the defendant — is without merit.

At the conclusion of a *Wade* hearing, the trial judge ruled that the witness would be allowed to make an in-court identification of the defendant, finding that he had a· sufficient independent source upon which to base such an identification. The trial court's ruling as to exactly which of the several identification procedures should be suppressed is confused. At one point, the court ruled that no evidence could be presented regarding "lineups." This apparently refers to both the "parade" through the Captain's office at the County Jail and the lineup the following morning at the Denver Police Department. At another point, the trial court indicated that the last two identification procedures would be suppressed. This is the second photographic display and the lineup. The People have acknowledged that the lineup and the "parade" were improper, but argue that the

photographic displays were not illegal and that the trial court was correct in determining that there was an independent source for an in-court identification.

█ In a case of this type, the test to be applied is set forth by this court in *Whitman v. People,* 170 Colo. 189, 460 P.2d 767 and reiterated in *Phillips v. People,* 170 Colo. 520, 462 P.2d 594 as follows:

"The test set forth by the Supreme Court in *Stovall v. Denno,* [388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199] whereby an out of court identification of the defendant is measured against due process of law is to ask whether the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. The answer to this question depends on the totality of the circumstances surrounding the confrontation."

█ It is the burden of the People to show by clear and convincing evidence that any suggestion was not present and that the identification was the product of the victim's own recollection. *Stewart v. People,* 175 Colo. 304, 487 P.2d 371; *Martinez v. People,* 174 Colo. 125, 482 P.2d 375.

█ We agree with the trial court's ruling that the complaining witness be permitted to make the in-court identification. Notwithstanding the fact that the complaining witness was subjected to several identification procedures, it appears most convincingly from his testimony that he was basing his identification of the defendant solely upon his viewing the defendant at close range for approximately eight minutes during the occurrences involved. The complaining witness expressed no doubt whatsoever about his identification and indicated that because of the impact of this experience, he would never forget the defendant's face. The strength of the complaining witness' identification testimony would seem to foreclose the possibility that it was tainted by any of the identification procedures. *See Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 and *Brown v. People,* 177 Colo. 397, 494 P.2d 587.

### III.

The defendant's final assertion of error concerns the following ruling of the trial court. The court ruled that if the defense went into the first photographic confrontation session, which was exculpatory in nature, the prosecution would be able to go into the inculpatory second photographic identification in retaliation, even though this second photographic identification procedure was, according to the defendant, suppressed by the trial court. As noted previously, the various rulings and comments by the trial judge present a confusing picture of his precise rulings in this regard. We therefore do not consider this assignment of error.

The judgment is reversed and the cause is remanded for a new trial.