## No. 27849

## The People of the State of Colorado v. William Francis Saars

(584 P.2d 622)

Decided September 18, 1978.

296

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Linda Palmieri Rigsby, Assistant, Criminal Appeals Section, for plaintiff-appellee.

Hutchinson, Black, Hill, Buchanan & Cook, John A. Purvis, for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

Defendant-appellant Saars appeals his jury convictions of three counts of first-degree sexual assault, one count of second-degree burglary, and two counts of felony menacing. We affirm all six convictions.

On the afternoon of December 3, 1975, at a bar in Longmont, one Weidmaier met the defendant Saars and three other males. He had not previously known any of the four. Weidmaier agreed to take them to the department of the female victim, in Boulder, to obtain drugs from her roommate from whom Weidmaier had previously purchased drugs. Upon arriving at the apartment, the five men knocked on the door but there was no response. Nevertheless they entered the apartment, and all except Weidmaier immediately produced guns from their clothing.

The victim testified that she awakened in her bed to find the men entering her bedroom with guns pointed at her. After a discussion about drugs and money, she was told to get out of bed. Saars then sat on the bed and forced her to perform fellatio on him while another of the men engaged in anal intercourse with her. Another man began to go through the victim's dresser and as she attempted to see what he was doing, a fourth man held a gun to her head and warned her to keep her attention on what she was doing. Weidmaier observed but did not participate in these sexual acts.

All of the men except one Sullivan then dispersed to search the apartment. Sullivan remained in the victim's bedroom and compelled her to perform fellatio upon him.

At this point the telephone rang and the victim, accompanied by one of the men, went downstairs to answer it. As she walked past the defendant Saars, he grabbed her, placed his fingers into her vagina and then grasped her breasts. After she answered the telephone in the presence of the armed intruders, Saars took her back to her bedroom where he required her to perform fellatio on him and to submit to his performing cunnilingus on her. Following this, Saars forced her to submit to vaginal intercourse.

Thereafter, money was taken from the victim, she was threatened with guns, and the group left, taking her car and many articles from her apartment. As the four assailants left the apartment building, Weidmaier fled from them and hid. He watched the four men drive away in two vehicles, a van and a Karmann Ghia automobile. Weidmaier then returned to the apartment house and contacted the apartment manager, who called the police. Some time later, Saars and two of the men who had been with

him at the victim's apartment were arrested at a Boulder residence.

## I. *The Warrantless Arrest.*

Appellant first argues that the court erred in admitting evidence taken from him and statements made by him on the ground that these should have been suppressed as the fruits of an unlawful, warrantless arrest unsupported by probable cause. We do not agree.

When an adequate opportunity to obtain an arrest warrant exists, the police are generally required to obtain a warrant. *People v. Hoinville,* 191 Colo. 357, 553 P.2d 777 (1976).[1] However, exigent circumstances requiring immediate police action in order to protect the public safety will excuse the requirement of a warrant. *People v. Hoinville, supra; DeLaCruz v. People,* 177 Colo. 46, 492 P.2d 627 (1972). Exigent circumstances clearly existed here where the defendant and his cohorts were armed and fleeing from the crime scene. Time was of the essence. The police officer had the choice of acting upon the information which he had obtained or of allowing the suspects to escape. In such circumstances, if probable cause exists, an immediate arrest may be made without resort to the time-consuming process incident to obtaining a warrant.

Even though exigent circumstances excuse the need to obtain an arrest warrant, in order for a warrantless arrest to be lawful, the arresting officer, at the time of the arrest, must have had probable cause to believe that an offense had been committed and that the defendant had committed it. Section 16-3-102, C.R.S. 1973; *People v. Moreno,* 176 Colo. 488, 491 P.2d 575(1971).

Mere suspicion cannot support a finding of probable cause for a warrantless arrest. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *See People v. Weinert,* 174 Colo. 71, 482 P.2d 103, 104 (1977). Probable cause for arrest may be based on a combination of facts personally observed by the arresting officer and information relayed to him by fellow officers. *People v. Hubbard,* 184 Colo. 225, 519 P.2d 951 (1974). The right of an officer to act upon information given to him by a fellow officer is premised upon the latter's possession of trustworthy information. *People v. Corbett,* 190 Colo. 388, 547 P.2d 1264 (1976). If, however, the fellow officer does not in fact possess reliable information, the arrest by another officer, which as been predicated upon an unfounded belief that probable cause exists, cannot stand after the fellow officer's information is shown to have been unreliable.

Applying these principles to the present case, we next consider whether Dorn, the arresting officer, had probable cause to arrest Saars without a warrant. In making this determination we must consider not

---

[1] Even when there is probable cause for an arrest, "[a]n arrest warrant should be obtained when practicable." Section 16-3-102, C.R.S. 1973.

only the legal rules involved, but also their practical application to everyday law enforcement routines.

"In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonsonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949).

Prior to the arrest, Dorn had received from fellow officers detailed descriptions of the suspects and their two vehicles. These descriptions had been given by Weidmaier to the officers who relayed them to Dorn. At the time of the arrest, Officer Dorn personally observed the two suspect vehicles and several suspects at a residence. Since the facts observed by Dorn personally were not sufficient, in and of themselves, to constitute probable cause for arrest, the validity of the arrest depends on the trustworthiness of the information provided to Dorn's fellow officers by Weidmaier and then relayed to Dorn.

The appellant attacks the use of Weidmaier's information as the foundation for a finding of probable cause by noting that the police did not take time to inquire into Weidmaier's background to determine if he was credible, and did not attempt to corroborate or confirm the reliability of the information he had furnished.

The People respond by arguing that Weidmaier was not only an eyewitness to the crimes but a "citizen informant," and therefor no such investigation of his credibility nor the reliability of his "tip" was required. They point out that he took no part in the crimes. While admitting that he had voluntarily accompanied the Saars group to the apartment, the People assert that Weidmaier had no reason to expect that Saars and his companions would commit the crimes which occurred. In a practical sense, they contend, Weidmaier was a prisoner at the apartment. Thus for purposes of evaluating the reliability of the information he supplied the police, the People argue that Weidmaier should be considered a "citizen informant," who is presumed credible and whose information is presumed reliable.

■ In *People v. Hubbard,* 184 Colo. 225, 228-29, 519 P.2d 951, 953 (1974), we recognized the rule that:

". . . when the source of the information is a citizen-informant who was an eyewitness to the crime and is identified, the information is presumed to be reliable, and the prosecution is not required to establish either the credibility of the informant or the reliability of his information."

■ A citizen eyewitness who, with no motive but public service, and without expectation of payment, identifies himself and volunteers information to the police, has inherent credibility. Therefore the usual requirement of showing prior reliability when police act on an informant's tip does not apply in these circumstances. *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971).

■ Thus we must determine whether Weidmaier can be characterized as a citizen-informant within this rule. Although Weidmaier led the defendant to the apartment initially, his purpose was to participate in a narcotics purchase and he had neither any connection with the violent crimes which followed nor any reason to anticipate them. He escaped and voluntarily contacted the police as soon as he was able, openly identified himself and relayed his information without any motive of revenge or desire to receive either payment or concessions from the police. In fact Weidmaier's actions jeopardized his own position, for he was then on probation for an unrelated offense. *See United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We hold, therefore, that Weidmaier clearly fell within the status of a citizen-informant. Thus his credibility and the reliability of his information were sufficient, as a matter of law, to justify the police action. *People v. Hubbard, supra; People v. Glaubman, supra.*

■ In our view, the facts the arresting officer personally observed, combined with reliable information conveyed to him by fellow officers, were sufficient to warrant a reasonably cautious and prudent police officer to believe, in light of his training and experience, that an offense had been committed and that the appellant probably had committed it. *People v. Nanes,* 174 Colo. 294, 483 P.2d 958 (1971); *People v. Collman,* 172 Colo. 238, 471 P.2d 421 (1970). The record shows that the vehicles and the appellant substantially matched the descriptions received by Dorn. As we said in *People v. Nanes:*

"It is not necessary for the arresting officer to know of the reliability of the informer or to be himself in possession of information sufficient to constitute probable cause, provided he acts upon the direction or as a result of communication with a brother officer or that of another police department and provided the police as a whole are in possession of information sufficient to constitute probable cause to make the arrest." 174 Colo. 294, 300-301, 438 P.2d 958, 962 (1971).

We hold that the evidence supported the trial court's finding of fact and conclusion of law that there was probable cause to arrest. Since the arrest was lawful, the incidental search of the appellant's clothing was proper, and the items seized and statements taken were properly admitted into evidence.

## II.  *Introduction of "Statement."*

The appellant next contends that the trial court erred in denying his motion for a mistrial based on the introduction of a "statement" Saars allegedly made to a police officer.

At the trial the district attorney asked a police officer on direct examination about the process of booking the defendant. The officer replied in narrative form. In that narrative he related that, upon finding a watch in Saars' clothing, he had asked about it and Saars had replied, "I forgot

about it." Defense counsel did not object at that point. On redirect, the officer, in response to a question, repeated that comment by Saars when confronted with the watch. At this point defense counsel, in chambers, moved for a mistrial. The motion was denied and the court immediately instructed the jury to disregard the question and answer. The prosectution later established that this watch found on Saars at the time of booking belonged to the victim. No other property of hers was found on him.

Saars predicates his argument that it was reversible error not to declare a mistrial on the ground that his response, "I forgot about it," constituted a "statement" which the prosecutor improperly elicited at trial after having told the court and defense counsel at a preliminary hearing that no statement by Saars existed. The appellant contends that this "statement" should have been furnished to the defense during discovery. Moreover, he asserts that the injection of this "statement" at the trial was so prejudicial that it was reversible error not to declare a mistrial.

Rulings on mistrial motions are within the trial court's discretion and, absent an abuse of that discretion, the trial court's determination will not be disturbed on review. *People v. Becker,* 187 Colo. 344, 531 P.2d 386 (1975); *People v. Steed,* 189 Colo. 212, 540 P.2d 323 (1975); *People v. Gomez,* 184 Colo. 319, 519 P.2d 1191 (1974). The trial court, having observed first-hand the effect of the quoted remark on the jurors, concluded that it was not sufficiently prejudicial to require a mistrial.

Moreover, since there was no defense objection when the contested "statement" first came into evidence, it is questionable whether prejudicial error of law can be predicated on denying a mistrial when the same four words were repeated. The trial court instructed the jury to disregard the statement, and our case law has recognized a presumption that juries follow that instruction. *People v. Mejia,* 188 Colo. 120, 534 P.2d 779 (1975). We hold, therefore, that the trial court did not abuse its discretion in denying the motion for a mistrial.

### III.  *Lesser Offense Instructions.*

Next the appellant contends that the trial court erred in refusing to give instructions on the lesser included offenses of second-degree sexual assault and first-degree criminal trespass. We decline to accept this contention.

An instruction which permits the jury to find a defendant innocent of the principal charge and guilty of a lesser charge should be given if supported by some evidence. *People v. Lundy,* 188 Colo. 194, 533 P.2d 920 (1975). However, if the evidence does not present any rational basis for conviction of the lesser offense, an instruction for the lesser charge should not be tendered to the jury. *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974).

## A. *Sexual Assault.*

One commits first-degree sexual assault by inducing the victim to submit to sexual penetration by a threat of imminent death, serious bodily injury, extreme pain, or kidnapping, if the victim believes the actor has the present ability to carry out his threat. Section 18-3-401(1)(b) C.R.S. 1973 (1976 Supp.). Second-degree sexual assault occurs if the actor, by any means other than those constituting first-degree sexual assault and reasonably calculated to cause submission against the victim's will, induces the victim to submit to sexual penetration. Section 18-3-403(1)(a), C.R.S. 1973 (1976 Supp.).

█ In this case each of Saars' three sexual assaults was perpetrated while he was carrying a gun or actually pointing it at the victim. There was no evidence presented showing that the victim was persuaded to submit by any means other than these threats of imminent death or serious bodily injury. Thus the evidence provides no rational basis on which the jury could have acquitted the defendant of the greater offense while finding him guilty of the lesser offense. The jury instruction regarding second-degree sexual assault was properly refused.

## B. *Burglary.*

One commits second-degree burglary by knowingly breaking into, entering, or unlawfully remaining in a building with the intent there to commit a crime against a person or property. Section 18-4-203, C.R.S. 1973. First-degree criminal trespass, insofar as here pertinent, is committed by unlawfully entering or remaining in a dwelling. Section 18-4-502, C.R.S. 1973.

█ The evidence presented by the prosecution was sufficient to establish a prima facie case on the charge of second-degree burglary. Weidmaier's uncontroverted testimony showed that immediately upon entering the apartment, Saars and his cohorts drew guns and threatened to shoot Weidmaier if he attempted to call the police.

The record fails to disclose any facts or circumstances which would tend to negate the People's evidence that Saars and his confederates, when they entered the apartment, harbored the specific intent to commit a crime against any person found there at the time they entered. With no evidence in the record to controvert the prosecution's evidence, the specific intent requirement never became an issue. The mere fact that the jury had the option of declining to believe Weidmaier's uncontroverted testimony on intent did not give rise to a requirement of an instruction on criminal trespass. *People v. Lundy, supra; Lucero v. People,* 161 Colo. 568, 423 P.2d 577 (1967); *Vigil v. People,* 158 Colo. 268, 406 P.2d 100 (1965). The trial court correctly refused to instruct the jury on criminal trespass.

## IV. *Constitutionality of Statute.*

Appellant asserts that the three counts of first-degree sexual assualt should be dismissed because section 18-3-402, C.R.S. 1973 (1976 Supp.),

creates arbitrary and capricious penalty classifications. Pursuant to section 18-1-603, C.R.S. 1973, an accessory is accountable as a principal. Thus, an accessory can be guilty of first-degree sexual assault. An actor who commits first-degree sexual assault is guilty of a class two felony if he is physically aided and abetted by another. Otherwise, he is guilty of a class three felony. Section 18-3-402(2)(a), C.R.S. 1973 (1976 Supp.). Appellant contends that this legislative scheme makes it possible for an accessory to be punished more severely than the actual perpetrator of the crime. He argues that an accessory may be guilty of a class two felony under the first-degree sexual assault statute because an accessory is necessarily *physically* assisted by another (the perpetrator), whereas the perpetrator himself may be guilty of only a class three felony. Thus, he concludes, an accessory who performed no physical act could be subjected to greater penalties than the actual assailant.

This argument, while interesting from an academic viewpoint, is based entirely on a hypothetical fact situation not now before us. The facts of this case demonstrate this defendant's physical involvement and it follows that he could only have been found guilty as an accessory who *physically* aided and abetted the actor.[2]

The appellant has no standing to challenge the constitutionality of the statute as applied because he has not personally been adversely affected by the alleged constitutional defect. Whether the statute may be unconstitutionally applied to others is not before us, and therefore we may not decide that issue. *People v. Stage,* 195 Colo. 110, 575 P.2d 423 (1978).

### V. *Number of Sexual Assaults.*

Finally Saars asserts that since the sexual encounters all occurred within a period of about two hours on a single day and involved a single victim, they all constitute a single criminal episode or transaction. Therefore, he contends, it was improper for the prosecution to charge three separate counts of first-degree sexual assualt. Alternatively he contends that even if the prosecution's charge is proper, the trial court should have required the prosecutor to elect a single count on which to proceed or should have instructed the jury that it could convict the defendant of only one count of first-degree sexual assault.

We decline to hold that the defendant's sexual assaults must be viewed, and prosecuted, as a single transaction. At least three separate and distinct incidents of sexual assault occurred in three different ways, each in a separate time period. The defendant was charged on a complicity theory based on the first incident involving anal intercourse. After that

---

[2] Here one of the counts of first-degree sexual assault was based on a complicity theory because Saars immobilized the victim at gunpoint and forced her to submit to anal intercourse with his companion while simultaneously forcing her to perform fellatio on him.

assault had been completed, the victim was forced to perform fellatio on the defendant while he performed cunnilingus on her. Finally the defendant forced vaginal intercourse upon the victim. These constituted three separately definable criminal acts, each of which could have been prosecuted individually. There is ample evidence to support a separate charge and conviction for each act, and therefore we hold that the prosecution properly charged three counts of first-degree sexual assault.

The judgment is affirmed.