The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Robert CHAVEZ, Defendant-Appellant.

No. 79SA551.

Supreme Court of Colorado,
En Banc.

Aug. 10, 1981.

J. Gregory Walta, Colorado State Public Defender, Shelley Gilman, Deputy State Public Defender, Denver, for defendant-appellant.

QUINN, Justice.

The defendant, Robert Chavez (defendant), appeals his conviction of two counts of second degree burglary of a dwelling, section 18–4–203, C.R.S. 1973 (1978 Repl. Vol. 8). He alleges that the trial court erred in denying his pretrial motion to prohibit prosecutorial use of prior conviction evidence as substantive proof of habitual criminal charges. He further asserts that the court erred in denying his motion to suppress various items of evidence taken from him during and shortly after his arrest and in denying his motion to suppress a custodial statement made to the arresting officers. Lastly, he challenges the court's instruction to the jury on possession of recently stolen property.

■ On the basis of *People v. Chavez*, Colo., 621 P.2d 1362 (1981), *cert. denied*, —— U.S. ——, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), (May 26, 1981), we conclude that the denial of the defendant's pretrial motion to prohibit the prosecution from using his trial testimony as substantive proof of habitual criminality violated due process of law by impermissibly burdening his constitutional right to testify in defense of the burglary charges. Because a new trial is necessary and because the issues of suppression and the propriety of the jury instruction will confront the trial court once again, we elect to address these issues in order to reduce any potential for error upon retrial.

### I. The District Court Proceedings

The information charged the defendant with two counts of second degree burglary and alleged several prior felony convictions as the basis for habitual criminal charges.[1]

Nolan L. Brown, Dist. Atty., Frederick B. Skillern, Deputy Dist. Atty., Golden, for plaintiff-appellee.

---

1. Under section 16–13–101, C.R.S. 1973 (1978 Repl. Vol. 8 and 1980 Supp.), every person convicted of a felony for which the maximum penalty exceeds five years who, within ten years preceding the date of the offense, has been twice previously convicted of felonies separately brought and tried shall be adjudged an habitual criminal and punished by confinement

The charges arose out of two residential burglaries in the 4000 block of Benton Street in Wheat Ridge, Colorado, between the hours of 11:45 a. m. and 12:45 p. m. on March 4, 1977.

Benton Street is a dead-end street in a quiet residential neighborhood. Mr. and Mrs. Mohesky resided at 4005 Benton Street and Mrs. Edith Albasini lived across the street at 4060 Benton Street. The three of them were at church when the burglaries occurred. While preparing to leave their homes for church, their attention was attracted by a man walking back and forth and suspiciously lingering by various houses on the block. Once outside her home Mrs. Albasini saw the man again. He appeared to be hiding and waiting for the parties to leave the area. Mr. Tiege, a neighbor who lived two doors south of Mrs. Albasini, also observed this man on the block after the Moheskys and Mrs. Albasini had left for church.

When the Moheskys and Mrs. Albasini returned from church at approximately 12:45 p. m., they found their homes burglarized. The Moheskys determined that two watches, social security checks, an Exxon credit card and some money had been stolen. Missing from Mrs. Albasini's home were a watch, two rings, a silver plate, a silverware set and some money. The Wheat Ridge Police Department was called and officers responded to the scene at approximately 1:00 p. m.

Officer Sadar took almost identical descriptions from Mrs. Albasini and Mr. Teige of the man observed earlier by them. The officer immediately dispatched the following description over the police radio: a Spanish American male, age 30–40 years, 5'8" tall, medium build, long black hair to collar, wearing a light tan or white three-quarter length coat and dark blue pants, and proceeding south on Benton toward 38th Avenue. Detective Stewart noted this description and began to canvass the stores in the immediate area for information about the suspect. The clerk of the Ridge Drug Store told the detective that a man matching this description earlier had purchased a bottle of blueberry brandy and had asked for directions to Clay Street in Denver. The clerk directed the man east on 38th Street to a bus stop. Officer Stewart radioed this information to other officers.

Officers Cassa and Chism heard the radio dispatch of the initial burglary report, the description of the suspect, and Officer Stewart's follow-up broadcast. They drove to Elitch's Amusement Park, which was on 38th Avenue and Wolff Street, approximately ten blocks from the burglarized residences, and combed the area for a person matching the description. Initially they stopped a man with a short tan jacket, took him back to the burglary scene for possible identification by the victims, and then released him. Upon their return to the amusement park shortly before 1:30 p. m., they observed in the parking lot a Spanish American male, about 5'8" in height, with black hair, and wearing a three-quarter length tan jacket and dark blue pants. This person was the defendant. Apparently realizing he was being watched, the defendant ducked behind and between cars while continuing to walk. The officers saw that he was carrying a pair of gloves in his right hand while keeping his left hand in his pocket. When the officers approached the defendant in their vehicle, he walked faster and then trotted away from them.[2] They stopped the defendant and told him that there had been a burglary in the area and that he matched the description of the suspect. Upon frisking him they recovered a partially empty brandy bottle from his pocket and took the pair of gloves from his hand.

for a term of not less than twenty-five nor more than fifty years. If the person convicted has previously been convicted of three or more felonies separately brought and tried, the punishment is life imprisonment.

2. Officers Cassa and Chism were in plain clothes and driving an unmarked police vehicle. However, the vehicle had spot lights on its side and a large rear antenna and, according to Officer Cassa's suppression testimony, it was very obviously a police vehicle.

The defendant was handcuffed and placed in the police vehicle and verbally advised of His *Miranda*[3] rights. He refused to talk to the officers at this time. In driving the defendant back to the scene of the burglaries, Officer Cassa asked him where he obtained the brandy bottle. The defendant responded that he purchased it at the Country Gentleman's Store and, according to the trial testimony of the arresting officers, he further replied that he had been in the area of the burglaries that day but had not committed them. When the officers arrived at the 4000 block of Benton Street, they directed the defendant to empty his pockets and place the contents on the hood of the police vehicle. He complied and placed various items on the vehicle, including a ring, a watch and several coins. Mr. Mohesky, Mrs. Albasini and Mr. Tiege were there and identified the defendant as the person previously seen by them that morning.[4] Mr. Mohesky also identified the watch, and Mrs. Albasini the ring, as items stolen from their homes in the burglaries.

The trial court denied the defendant's pretrial motion to suppress the various items of evidence recovered from his person, concluding that the officers had probable cause to arrest the defendant at Elitch's Amusement Park and that the items taken from him were seized in the course of a valid arrest. With respect to the defendant's motion to suppress his statement to Officer Cassa, the court ruled that the statement was made after a knowing, intelligent and voluntary waiver of *Miranda* rights.[5] The various objects recovered from the defendant and his statement to Officer Cassa were admitted into evidence at trial.

The trial court also denied the defendant's pretrial motion to prohibit the prosecution from using as substantive proof of the habitual criminal charges any testimonial admissions to prior convictions which he might make in his trial testimony on the substantive counts of burglary.[6] The court ruled that if the defendant should elect to testify at trial in defense of the burglary counts, the prosecution would be permitted to impeach the defendant by prior felony convictions and could utilize the defendant's admission to those convictions as substantive proof of the habitual criminal charges.

The defendant elected not to testify in his defense on the trial of the burglary counts. The court, over the defendant's objection, instructed the jury on the evidentiary effect of possession of recently stolen property on the burglary charges. The jury returned verdicts of guilty to both counts of burglary and the prosecution then presented its evidence on the habitual criminal

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. At the suppression hearing Officer Cassa testified that, in reply to his question about the brandy, the defendant indicated that "he had purchased it at the Country Gentleman's Store, which was in the immediate area of the burglary." It is unclear whether the words "which was in the immediate area of the burglary" represented the defendant's actual response to the question or merely were added by Officer Cassa to describe the former location of the store. Officer Cassa testified at the suppression hearing that the Country Gentleman's Store had closed prior to March 4, 1977, the day of the arrest, and had been replaced by a pool hall. The pool hall was across the street from the Ridge Drug Store, where Detective Stewart, shortly after the burglaries, interviewed the clerk about a man matching the description of the burglar.

At trial both Officer Cassa and Officer Chism testified to a somewhat different version of the defendant's reply. According to Officer Cassa, "he [the defendant] indicated to me that he had been in the area of the burglary earlier that day, but that he had not committed any burglaries." Officer Chism's trial testimony was that the defendant "stated he had been in the area earlier but he pulled no burglaries."

5. The trial court suppressed the out-of-court identifications of the defendant made by Mr. Mohesky, Mrs. Albasini and Mr. Tiege at the showup at Benton Street immediately after the defendant's arrest and, also their in-court identifications.

6. The defendant also requested that, regardless of his election to testify or not to testify in defense of the burglary counts, the trial on the habitual criminal charges be bifurcated from the trial on the burglary counts. The trial court denied the defendant's motion. Because the defendant cannot be retried on the habitual criminal charges, we need not address the issue whether the trial court erred in denying his request for a bifurcated trial.

charges. The court ultimately dismissed these charges due to a failure of proof.[7] Subsequently the court sentenced the defendant to consecutive terms of 35 to 40 years on each burglary conviction.[8]

## II. *The Habitual Criminal Charges*

We first address the defendant's contention with respect to the trial court's denial of his pretrial motion to prohibit the prosecution from using his testimonial admissions to prior felony convictions as substantive evidence of his habitual criminality. The defendant contends that the trial court's ruling violates due process of law, *U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25, by unduly burdening his constitutional right to testify in his own defense. We agree.

The trial of this case occurred before our recent decision in *Chavez v. People, supra,* which involved this same defendant. In that case, as here, the trial court ruled that the prosecution was entitled to impeach the defendant by eliciting or introducing evidence of his prior felony convictions and that the jury could consider this prior conviction evidence for substantive purposes in its deliberations on the habitual criminal charges. Recognizing the dilemma confronting a defendant charged with habitual criminality and desirous of testifying in his own defense on the substantive charges, we held in *Chavez* that the bifurcation of the trial, although not inappropriate, still was insufficient to relieve the impermissibly unconstitutional burden that the substantive use of the defendant's testimonial admissions to prior convictions imposed on his constitutional right to testify in his own defense:

"The defendant facing habitual criminal charges is forced to choose between his constitutional right to testify in his own defense and his constitutional right to have the State prove the elements of habitual criminality. If he chooses to testify about his past record, the prosecution is relieved of its burden of proving the elements of habitual criminality. The statutory procedure here suffers from the same flaw the United States Supreme Court condemned in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968): it creates an intolerable tension between two constitutional rights.

\* \* \* \* \* \*

"The trial court's ruling that evidence of the defendant's prior convictions elicited during his trial on the substantive charges, would be admissible for substantive purposes in the habitual criminal proceeding was an error which its 'bifurcation' of the jury's deliberations failed to remedy. Instead, when the defendant expressed a desire to testify on his own behalf and requested a bifurcated proceeding, the trial court should have ruled that it would (1) instruct the jury to consider any admissions of prior convictions elicited from the defendant in connection with his testimony on the substantive offense *only* as they affect his credibility [citation omitted], and (2) that the prosecution must meet its burden of proving beyond a reasonable doubt the defendant's prior convictions by evidence independent of the defendant's testimony or duly authenticated records of those convictions. [citation omitted]." —— Colo. ——, 621 P.2d at 1365, 1367.

 Our decision in *Chavez* mandates that the defendant's convictions of burglary be reversed. Since the trial court dismissed the habitual criminal charges for insufficiency of proof after jeopardy had attached,

---

7. The failure of proof stemmed from the testimony of a court clerk who was unable to sufficiently establish the date of one of three prior felony convictions. The other two convictions had been incurred more than ten years preceding the commission of the two burglaries on March 4, 1977, and, therefore, upon the dismissal of the third conviction for failure of proof, there was no legal basis for an adjudication of habitual criminality. *See* section 16–13–101, C.R.S. 1973 (1978 Repl. Vol. 8 and 1979 Supp.).

8. The defendant claims that the sentences are excessive. Because we reverse the convictions and remand for a new trial, it is unnecessary for us to address the issue of excessiveness.

the defendant cannot be retried in this case for habitual criminality based on the same habitual criminal counts involved in the first trial. *See Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).

### III. *Probable Cause to Arrest*

We next consider the defendant's claim that the court erred in denying his motion to suppress various objects taken from him during and shortly after his arrest. We are unpersuaded by his claim.

▉ Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person in believing that the defendant has committed a crime. *See, e.g., Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *People v. Vigil*, 198 Colo. 185, 597 P.2d 567 (1979); *People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978); *Gonzales v. People*, 156 Colo. 252, 398 P.2d 236 (1965). Probable cause may be based on the personal observations of the arresting officer, on facts provided to him by fellow officers or others, or on a combination of these sources of information. *See, e.g., Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *People v. Baca*, 198 Colo. 399, 600 P.2d 770 (1979); *People v. Saars, supra.* "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . . ," and an arrest may be constitutionally valid even though based on reasonably mistaken identity. *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484, 490 (1971).

▉ In this case the arresting officers received the report of two recently committed burglaries and promptly reconnoitered the vicinity of the crimes for a person matching the broadcast description of the suspect. The determination of probable cause under these circumstances must be based on the assessment of the facts known to the officers immediately preceding the arrest. *See, e.g., People v. Johnson*, Colo., 605 P.2d 46 (1980); *People v. Baca, supra; People v. Vigil, supra; Falgout v. People*, 170 Colo. 32, 459 P.2d 572 (1969); *Jones v. People*, 167 Colo. 153, 445 P.2d 889 (1968).

▉ The arresting officers knew from personal observation that the defendant's physical characteristics and clothing were markedly similar to those of the suspect. The arresting officers also knew that the defendant's presence at that location was consistent with the route taken by the man who recently had purchased brandy in a nearby drugstore and whose physical appearance closely resembled that of the suspected burglar. Finally, the defendant's furtive gestures and efforts to hide, although not sufficient by themselves to establish probable cause, were additional circumstances supporting the officers' reasonable belief that the defendant indeed was the suspect for whom they were looking. *See, e.g., Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 937 (1968).

We conclude that the arrest of the defendant was based on probable cause and that the seizure of various items of evidence from his person at the time of and shortly after his arrest was constitutionally justified as incident to his arrest. Consequently, the trial court properly admitted these items into evidence at trial.

### IV. *Defendant's Custodial Statement*

▉ Next we consider the trial court's ruling that the defendant's statement to Officer Cassa was based on a knowing, intelligent and voluntary waiver of his *Miranda* rights. The uncontradicted suppression testimony established that the defendant, upon being first advised of his *Miranda* rights, refused to make any statement to the police.[9] Moments thereafter, while be-

---

9. At the suppression hearing Officer Chism, after describing how he arrested the defendant and advised him of his *Miranda* rights, testified as follows:

ing transported to the scene of the burglaries, he was questioned about where he purchased the brandy and he incriminated himself by admitting to having been in the area of the burglaries earlier that day.[10] We conclude that the record is totally devoid of any evidence from which the trial court reasonably could infer a waiver of *Miranda* rights.

A knowing, intelligent and voluntary waiver of rights requires more than a silent record. "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966). *Accord, e.g., Edwards v. Arizona,* —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Tague v. Louisiana,* 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); *Roybal v. People,* 178 Colo. 259, 496 P.2d 1019 (1972); *Constantine v. People,* 178 Colo. 16, 495 P.2d 208 (1972). This is not to say that a waiver never may be implied solely from conduct or from a response to interrogation. The prosecution's burden, however, is to establish a clear evidential basis for the waiver in such cases. *Cf. North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (after *Miranda* advisement, defendant's statement that he understood rights and would talk to police but would not sign his name to any forms constitute waiver); *People v. Ferran,* 196 Colo. 513, 591 P.2d 1013 (1978) (after *Miranda* advisement and affirmative response by defendant that he understood rights, the defendant's head nod

up and down in reply to question whether he wanted to talk constitutes waiver).

The evidence unquestionably establishes that the defendant's initial exercise of his constitutional right to silence was followed up directly with an officer's question calculated to elicit an incriminating response. *See, e.g., Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *People v. Lee,* Colo., 630 P.2d 583 (1981); *People v. Lowe,* Colo., 616 P.2d 118 (1980). This momentary sequence of advisement, invocation of silence and then interrogation belies any notion that the defendant's exercise of his privilege against self-incrimination was scrupulously honored. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). The evidence here is strikingly similar to that in *Roybal v. People, supra,* where we found the record legally insufficient to support the trial court's finding of waiver:

"Clearly, [the defendant] was not asked if he desired an attorney and was not given an opportunity to obtain one. Nor did he expressly waive his rights. An examination of the evidence shows he did nothing verbally or by conduct from which a waiver could fairly be implied. For aught that appears in the record, [the defendant] did nothing but sit silently in the police car until he was asked the question which elicited the incriminating response. A valid waiver will not be presumed simply from the silence of the accused after warnings have been given." 178 Colo. at 262–63, 496 P.2d at 1021.

Upon retrial of this case the defendant's custodial statement in response to Officer Cassa's question should be excluded from evidence.

---

"Q. And at that time did he make any statements?

"A. No, sir, he wouldn't talk to us."

**10.** In their brief the People argue that even if the trial court erroneously admitted the defendant's statement, the error was harmless due to the exculpatory character of the statement.

The statement constituted an admission by the defendant of his presence in the area of the burglaries on the same day they occurred and, in this sense, the statement can hardly be characterized as exculpatory. In any event, because we are reversing the defendant's convictions on other grounds, we do not address the People's harmless error argument.

## V. *The Instruction on Recent Possession*

Since a retrial of this case is necessary, we address the defendant's claim of error in connection with the instruction on possession of recently stolen property. The challenged instruction stated as follows:

"The exclusive, unexplained possession of stolen property recently after a burglary serves to create an inference or incriminating circumstances that the Defendant stole such property and that such evidence, if established beyond a reasonable doubt, is sufficient in and of itself to justify a verdict of guilty in the absence of an explanation derived from the evidence in the case raising a reasonable doubt to his guilt."

In *Wells v. People*, 197 Colo. 350, 356, 592 P.2d 1321, 1326 (1979), which was decided after the trial of this case, we stated: "... [A]lthough the instruction uses the word 'inference,' read as a whole it almost compels a verdict of guilt if the jury finds the possession to be exclusive, recent and unexplained. It does not alert the jury that it may accept or reject the inference based on all the surrounding circumstances.

"Another failure in the challenged instruction is the direction that the inference from the exclusive, unexplained possession of the property taken in the robbery 'can be sufficient in and of itself to justify a verdict of Guilty for the charge of robbery * * *.' In effect, therefore, the instruction might be understood to relieve the state of its burden of proving beyond a reasonable doubt all the elements of robbery."

Because of these and other deficiencies in the instruction, we prospectively prohibited its use and proposed a suitable alternative. If the trial court, on retrial of this case, is satisfied that there is evidentiary support for an instruction on recent possession, it should formulate such instruction in accordance with the recommended instruction in *Wells*.

The judgment is reversed and the cause is remanded to the district court for a new trial in accordance with the views herein expressed.

HODGES, C.J., and ROVIRA, J., dissent.

LEE, J., concurs in part and dissents in part.

ROVIRA, Justice, dissenting.

I respectfully dissent.

For the reasons set out in the dissents of HODGES, C.J., and LEE, J., in *People v. Chavez*, Colo., 621 P.2d 1362 (1981) *cert. denied*, —— U.S. ——, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), in which I joined, I dissent from Part II of the majority opinion.

I also dissent from Part IV of the majority opinion, in which the record in this case is held insufficient, as a matter of law, to support the trial court's determination that the defendant made a knowing and intelligent waiver of his constitutional right to remain silent in the face of police custodial interrogation.

The majority treats the defendant's initial refusal to make a statement to the police as the sole evidentiary factor upon which it reverses the trial court's finding of waiver. However, such momentary silence has at most an equivocal meaning, *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Here the defendant did not explicitly invoke any of his rights under *Miranda*. Such a circumstance, if it had been present, might weigh heavily against a finding that the suspect waived his right to remain silent, *see Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), or waived his right to have an attorney present during interrogation, *see Edwards v. Arizona*, —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). But such a circumstance, I wish to emphasize, was not present here.

Rather, this was a case where the trial court found, and the record amply demonstrates, that the defendant's response to the officer's question about where he had obtained a bottle of brandy indicated a knowing and intelligent waiver of his right to be silent. The record establishes that the defendant was given a *Miranda* advisement prior to his interrogation. *Cf. People v. Lee*, Colo., 630 P.2d 583 (1981); *People v.*

*Lowe,* Colo., 616 P.2d 118 (1980). He was told that he was in custody as a burglary suspect. He agreed to accompany the officers to the scene of the alleged offense, and he engaged in a conversation with one of the officers while being driven to the scene. He was not subjected to any coercion or deprivation during this process, and he was not "a young or inexperienced citizen being taken into custody."[1] The record indicates, further, that when the defendant was taken into custody, he told the officers that he did not have anything to hide. In addition to his *Miranda* warnings, he was advised that he had a right to talk to counsel before making any waivers and that he had a right to stop answering any questions at any time. *Cf. Roybal v. People,* 178 Colo. 259, 496 P.2d 1019 (1972); *Constantine v. People,* 178 Colo. 16, 495 P.2d 208 (1972). In general, he adopted a cooperative attitude while in custody. As in *People v. Ferran,* 196 Colo. 513, 591 P.2d 1013 (1978), there was no indication of any infirmity that might render him especially susceptible to subtle, psychological pressure;[2] he did not deny he understood his constitutional rights; and there was no indication that he lacked adequate capacity to comprehend his situation or his rights.

The trial court did not presume that the defendant's silence, after *Miranda* warnings were given, constituted a waiver. *See Miranda v. Arizona, supra.* Instead, the trial court consciously focused on the question of whether the defendant made a knowing and intelligent waiver of his constitutional rights. *Cf. Tague v. Louisiana,* 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980).

A criminal suspect's waiver of *Miranda* rights need not be explicit, but may be inferred from the actions and words of the person interrogated. *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The question of waiver, in such a case, is to be determined from the particular facts and circumstances sur-

rounding the interrogation. *Id.; People v. Ferran, supra.* The prosecution must establish the defendant's waiver by clear and convincing proof. *Constantine v. People, supra; Reed v. People,* 171 Colo. 421, 467 P.2d 809 (1970).

The trial court was aware of the heavy burden under which the prosecution labored in showing that the defendant had waived his right to be silent. It found that the circumstances surrounding the interrogation established that the defendant's waiver was voluntary, knowing, and intelligent. I would uphold its ruling allowing the statement at issue to be admitted at trial.

I am authorized to say that Chief Justice HODGES joins in this dissent.

I am also authorized to say that Justice LEE concurs in this dissent as to Part II of the majority opinion.

1. This was the finding of the trial court. *See* footnote 7 in the majority opinion which reflects the defendant's prior felony convictions.

2. The bottle of brandy in the defendant's possession was open and some of its contents were

missing. At least one officer smelled an odor of alcoholic beverage emanating from the defendant; but there is no indication on the record that defendant was intoxicated when interrogated.