**Fred E. KING, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 84SC348.**

Supreme Court of Colorado,
En Banc.

Dec. 2, 1986.

David F. Vela, State Public Defender, Pamela Stross Kenney and Duane M. Kline III, Deputy Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Virginia Byrnes Horton, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to review an unpublished decision of the court of appeals which upheld the conviction of the petitioner-defendant, Fred E. King, for felony-theft by receiving and conspiracy to commit felony-theft. The court of appeals held that the defendant had waived his constitutional right to counsel by not taking adequate steps to secure retained or appointed counsel prior to trial. We conclude that the record does not establish a knowing, intelligent, and voluntary waiver of counsel by the defendant, and we therefore reverse the judgment of conviction and remand the case for a new trial.

## I.

On December 10, 1981, the defendant and a companion, Ronald Milano, carried two plastic bags containing approximately seventy-five to one hundred rings into a pawn shop in Colorado Springs and negotiated with the manager for the sale of the rings. Because the rings had price tags similar to those used in a jewelry store and because defendant and Milano appeared to be willing to sell the rings for a price much below their actual value, the manager suspected that the rings had been stolen. When the defendant momentarily left the store to make a telephone call, the manager contacted the police. A police officer arrived shortly thereafter and arrested the defendant and Milano outside the pawn shop. An ensuing investigation disclosed that the rings had been stolen from a jewelry store a few weeks earlier.

On December 23, 1981, an information was filed in the district court of El Paso County charging the defendant and Milano with receiving stolen rings valued at $10,000 or more[1] and conspiracy to commit theft by receiving.[2] The defendant and

---

1. § 18–4–410(5), 8B C.R.S. (1986). The crime of theft by receiving, as charged, is a class 3 felony punishable by a presumptive sentence of four to eight years plus one year of parole. § 18–1–105(1)(a)(I), 8B C.R.S. (1986).

2. § 18–2–201, 8B C.R.S. (1986). The crime of conspiracy to commit theft by receiving, as charged, is a class 4 felony punishable by a presumptive sentence of two to four years plus one year of parole. §§ 18–2–206(1) and 18–1–105(1)(a)(I), 8B C.R.S. (1986).

Milano appeared in court on January 4, 1982, and informed the judge that they had retained a Denver lawyer who was unable to appear on that day. The court continued the case until January 18, 1982, for the entry of an attorney. On January 18, the defendant and Milano again appeared without counsel and advised the court that their attorney was engaged in a trial in Denver. The court told them that they had a "right to counsel that can appear" but not to "counsel who can't appear in our court." After asking the defendant and Milano if they wished to proceed without counsel, the defendant responded: "I guess so, yes, until he can come up here." The court then informed the defendant and Milano of their right to counsel, warning them of the disadvantages of proceeding pro se and reminding them of the possibility of obtaining a court-appointed attorney, and scheduled the case for a preliminary hearing on February 5, 1982.

The defendant and Milano appeared for the preliminary hearing without counsel. The court conducted the preliminary hearing, with the defendant and Milano serving as their own counsel, and bound the case over for trial, again advising the defendant and Milano of their right to court-appointed counsel if they could not afford to hire an attorney. The court asked the defendant if he wished to be considered for a court-appointed attorney. The defendant responded that he had been in contact with an attorney but had not yet been able to pay a retainer because he had suffered a heart attack the previous summer and had been unemployed for nine months. The court required the defendant and Milano to enter pleas of not guilty, and the case was then set for trial thirty-one days later, on March 8, 1982. The court advised the defendant and Milano that it could appoint an attorney for them until February 16, 1982, without impairing the scheduled trial date, and then stated:

> Here's what I would like to do, Mr. King, Mr. Milano, when you leave the courtroom this morning, I want you to go down to the eligibility investigator on the second floor of this building and she will do a report for us and have it ready.

> That doesn't mean that you can't hire your own attorney but if by the 16th you haven't been able to retain your own counsel, the report would be ready and available and I can appoint counsel and you could get in touch with them and progress could be made in preparing for trial.

On the scheduled trial date of March 8, 1981, the defendant and Milano again appeared without counsel and the following exchange took place:

> THE COURT: This case was set for trial this date. Mr. King, are you ready to proceed?
>
> MR. KING: No, your honor, I'm really not.
>
> THE COURT: Why not?
>
> MR. KING: Well, I'd like to talk to the D.A. I wrote—two weeks ago I wrote a letter on them papers to the Public Defender's Office and—because the last time I was in court I went back to Denver to talk to my attorney, the one I was planning on retaining and the only way I could possibly get one was when my income tax was coming back—
>
> THE COURT: —Well, I deny any motion for continuance.
>
> MR. KING: —but I haven't seen the Public Defender.
>
> THE COURT: Mr. Milano, are you ready to proceed?
>
> MR. MILANO: No, I—
>
> THE COURT: I've warned you people three times that this case was going to trial today. I deny any motion for a continuance and this case will proceed to trial this date. I'm not granting any continuance.

> \*   \*   \*   \*   \*   \*

> MR. KING: —what about my letter to the Public Defender—
>
> THE COURT: —this is the time for your lawyer—this case is proceeding to trial and this is the time for your lawyer to be here and to be ready to represent you.
>
> We are proceeding to trial. We will be calling the jury up in an hour and a half.

Because the court was apparently engaged in another scheduled trial, the case was continued one week for trial.

On March 15, 1982, the defendant and Milano again appeared. When the case was called for trial, the defendant stated to the court that "[o]ur attorney was supposed to call you up this morning from the Public Defender's Office." The court replied that if an attorney appeared, he would be allowed to enter his appearance, and ordered the bailiff to obtain a jury panel for jury selection.

Outside the presence of the jury panel, the court summarized for the defendant and Milano the procedures to be followed during jury selection and trial. When the defendant was asked if he wanted to state anything for the record, he advised the court that he had contacted the public defender's office and sent "the paper" to the office and that he thought "Tom Herd was going to be here to talk to the Court about being the attorney." The court told the defendant that the public defender's office had not been appointed because the defendant had not requested court-appointed counsel and had not contacted the eligibility investigator. The defendant again informed the court that he believed a public defender would appear to represent him, but the court ordered the case to proceed to jury selection and trial with the defendant and Milano representing themselves.

Jury selection was completed before noon, and the prosecution presented its evidence in the afternoon, resting its case at approximately 4:45 p.m. On the second day of trial, out of the presence of the jury, the defendant protested to the court that he believed his constitutional right to counsel was being violated and that, therefore, he would not participate further in the proceedings. The court responded that it had repeatedly warned the defendant of his right to counsel and of the necessity of contacting the eligibility investigator, stating:

The Court cannot nor will justice tolerate frustration of its procedures by persons who refuse to cooperate, who refuse to take any steps toward securing counsel and who appear on the date of trial and again tell the Court they are going to secure counsel. For these reasons, your decision as to how you participate is, of course, your own strategic decision, however, this case will proceed.

When the defendant attempted to advise the court once again of his efforts at contacting a public defender, the court responded that "the Public Defender's Office does not appoint counsel" but the court does, "and only then upon an investigation being done by the eligibility investigator."

When the trial resumed, the defendant presented no evidence and made no closing argument.[3] The jury returned guilty verdicts to both counts. The court sentenced the defendant to six years plus one year of parole on his conviction for theft by receiving and a concurrent sentence of one year plus one year of parole on his conspiracy conviction. The public defender's office was thereafter appointed to represent the defendant on appeal.

The court of appeals affirmed the judgment of conviction, holding that the defendant knowingly and intelligently waived his right to counsel. We thereafter granted the defendant's petition for certiorari.[4]

**3.** In representing himself at trial, the defendant waived an opening statement. He declined to cross-examine the store manager who identified him and Milano as the two persons who tried to sell him the bag of rings. He asked a few questions of the police officer who arrested him and of the owner of the jewelry store from which the rings had been stolen. At the conclusion of the prosecution's case, the court advised the defendant of his right to testify and of his right to remain silent. The defendant elected not to testify. At the conclusion of the evidence, the court advised the defendant of his right to object to jury instructions. The defendant made no objection to the instructions, stating that he "wouldn't know what to object to anyhow."

**4.** We also granted certiorari on the issue of whether the trial court erred in denying the defendant's request, made on March 8, 1982, for a free transcript of the preliminary hearing for use at trial. Our resolution of the defendant's right to counsel claim, however, renders it unnecessary to address this issue.

## II.

"The right of one charged with a crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours." *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). The Sixth Amendment right to counsel, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, includes both the right to court-appointed counsel for an indigent and the right to a retained attorney for a defendant who is financially able to pay for legal representation. The Colorado Constitution also guarantees the right of counsel to a criminally accused. Colo. Const. art. II, § 16. When an indigent person is charged with a crime and faces the prospect of imprisonment upon conviction, the state is constitutionally required to provide legal counsel for the defendant at state expense. *Gideon*, 372 U.S. 335, 83 S.Ct. 792; *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).[5] "In order to be deemed indigent, the defendant need not be destitute; rather, it is sufficient that the defendant lack the necessary funds, on a practical basis, to retain competent counsel." *Nikander v. District Court*, 711 P.2d 1260, 1262 (1986). While a nonindigent defendant is not entitled to a court-appointed attorney and must therefore retain counsel at his own expense, his "choice of retained counsel should not be unnecessarily obstructed." *People ex rel. Losavio v. J.L.*, 195 Colo. 494, 500, 580 P.2d 23, 26 (1978).

■ A defendant's constitutional right to counsel, as other constitutional rights, may be waived. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). A waiver may take the form of an express statement by the accused of his intent to relinquish the benefits of counsel or may be implied from the circumstances of the case. *See North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *People v. Litsey*, 192 Colo. 19, 555 P.2d 974 (1976).

■ The validity of a waiver must be determined on the basis of the particular facts and circumstances of the case, including the background, experience, and conduct of the defendant. *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023. Courts indulge every reasonable presumption against a waiver of a fundamental right, and a waiver will not be presumed from a silent record. *E.g.*, *Tague v. Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980) (per curiam); *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality opinion). The state bears the burden of demonstrating that a waiver of counsel was knowingly, intelligently, and voluntarily made. *E.g.*, *Tague*, 444 U.S. 469, 100 S.Ct. 652; *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286; *People v. Chavez*, 632 P.2d 574 (Colo.1981); *Constantine v. People*, 178 Colo. 16, 495 P.2d 208 (1972); *Reed v. People*, 171 Colo. 421, 467 P.2d 809 (1970). Although a defendant may elect to waive the right to counsel in favor of self-representation, it is the responsibility of the court to ascertain that the defendant has been made aware of the dangers and disadvantages of self-representation and that "he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *see, e.g.*, *People v. Romero*, 694 P.2d 1256 (Colo.1985); *People v. Lucero*, 200 Colo. 335, 615 P.2d 660 (1980).

■ An indigent defendant requesting the appointment of counsel has the obligation to comply with reasonable procedures for the determination of his financial

---

5. Section 18–1–403, 8B C.R.S. (1986), expressly recognizes the right of an indigent accused to legal representation at state expense. One of the express statutory responsibilities of the state public defender is to represent indigent persons charged with felonies and certain misdemeanors. § 21–1–103(1) and (2), 8B C.R.S. (1986). The determination of indigency is to be made by the state public defender subject to review by the court. § 21–1–103(3), 8B C.R.S. (1986).

eligibility for court-appointed counsel. *See Allen v. People,* 157 Colo. 582, 404 P.2d 266 (1965). However, while noncompliance with such procedures may constitute some evidence of an implied waiver, it is only one circumstance to consider and does not conclusively establish an intent to forego the benefits of counsel. The extent and reasons for noncompliance must be considered along with all other circumstances of the case.

■ In the last analysis, the constitutional right to counsel is of such a fundamental character that it invokes, of its own accord, a protective duty on the part of the court. *Johnson v. Zerbst,* 304 U.S. at 465, 58 S.Ct. at 1023. In light of the strong presumption against the waiver of a fundamental constitutional right, a court must make careful inquiry of a defendant who, having previously indicated a desire to retain counsel, stands before the court on the day of trial unrepresented. *See DiBartolomeo v. State,* 450 So.2d 925 (Fla.App.1984) (per curiam) (when defendant failed to submit indigency affidavit as instructed by trial court, court could not compel defendant to proceed to trial without first making adequate inquiry into defendant's financial circumstances and his ability and desire to make an intelligent decision to waive counsel). In order for a court to conclude that an accused has impliedly waived counsel, the record as a whole, including the reasons proffered by the defendant for not having counsel, must show that the defendant knowingly and willingly undertook a course of conduct that evinces an unequivocal intent to relinquish or abandon his right to legal representation.

### III.

■ The record in this case fails to satisfactorily establish that the defendant effectively waived his constitutional right to counsel. The trial court's conduct in requiring the defendant to represent himself at trial, therefore, rendered the ensuing convictions constitutionally infirm under the United States and Colorado Constitutions.

We initially note that the defendant never expressly waived his right to counsel. On the contrary, the defendant at his first appearance in court on January 18, 1982, informed the court that he intended to retain private counsel, as was his right. At his later court appearances on the scheduled trial dates of March 8 and March 15, 1982, the defendant informed the court that he was financially unable to retain a private attorney and that he had previously contacted the public defender's office about legal representation on his behalf. At no time did the defendant expressly forego his right to legal representation.

The People basically rely on a theory of implied waiver, arguing that the defendant impliedly waived his right to counsel when he failed to comply with the trial court's procedures for an eligibility examination and that his last minute request for counsel on the days of trial was nothing short of a calculated effort to forestall the trial. The record in this case, however, is woefully inadequate to establish an implied waiver. If anything, the record demonstrates that the defendant throughout the proceedings sought and welcomed legal assistance. At the preliminary hearing on February 5, 1982, the defendant informed the court that he intended to retain an attorney but, due to a heart attack and unemployment, he had been unable to pay the attorney a retainer. Upon conclusion of the preliminary hearing, the court set the case for trial on March 8, 1982, thereby leaving the defendant only thirty-one days within which to hire private counsel. When the defendant's efforts to retain private counsel proved futile, he then contacted the public defender's office about legal representation. While the record shows that the defendant did not strictly conform to the court's procedures regarding an eligibility investigation, it also shows that he mailed to the public defender's office some papers concerning his financial condition. The defendant's deviation from the trial court's routine procedures for determining indigency cannot support an inference that the

defendant thereby impliedly waived his right to counsel.

What the record demonstrates is that the defendant repeatedly sought the assistance of counsel, first private counsel and, when that proved unavailing, the services of the public defender's office. Despite the defendant's unequivocal desire for counsel, the trial court remained inflexibly unwilling to engage in any inquiry about the defendant's financial condition and his desire for a court-appointed attorney. While an efficient docket is certainly a legitimate concern of a trial court, the interest in judicial efficiency cannot override the fundamental right of an accused to be represented by counsel.

In resolving this case, we need go no further here than to state that the trial court, before forcing the defendant to trial without the benefit of counsel, had the duty to make a careful inquiry about the defendant's financial condition, the defendant's understanding of his right to counsel, and his desires regarding legal representation. In the absence of such an inquiry, and in light of the record actually before us, there is simply no basis to conclude, as did the court of appeals, that the defendant impliedly waived his constitutional right to counsel.

The judgment is reversed and the cause is remanded to the court of appeals to return the case to the district court for a new trial.

ERICKSON, J., dissents.

VOLLACK, J., joins in the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, the defendant's dilatory conduct, gamesmanship, and refusal to retain private counsel or comply with the procedures necessary for appointment of counsel cannot form the basis for a reversal of the defendant's conviction. The right to counsel is a "fundamental [principle] which lie[s] at the base of all our civil and political institutions." *Gideon v. Wainwright*, 372 U.S. 335, 341, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963)

(quoting *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). However, a defendant may not manipulate that right in a manner that will impede the efficient and effective administration of justice. *See United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1214 (3d Cir.1969). In *Allen v. People*, 157 Colo. 582, 404 P.2d 266 (1965), we held that a defendant, who was advised three times of his right to appointed or retained counsel, waived his right to counsel when he appeared at trial unrepresented. We rejected Allen's contention that the trial court should have inquired into his indigency and should not have tried him without counsel, and said:

> The rule does not require the trial court to maintain a continuing vigilance over the financial affairs of one accused of crime in order to ferret out his poverty potential.... [T]he trial court fully advised the defendant of his right to be represented by an attorney, and ... determined that he was able to secure the services of an attorney. Ample time was given to prepare for trial. Thereafter, the burden rested upon the defendant to apprise the court of any change in circumstances resulting in indigency.

*Id.* at 591, 404 P.2d at 271.

In *People v. Litsey*, 192 Colo. 19, 555 P.2d 974 (1976), the defendant refused appointed counsel, and advised the trial court that he intended to retain a private attorney. The defendant failed to retain counsel, and appeared at trial unrepresented. In affirming his conviction, we said: "the defendant made no effort to retain counsel after being told of all his options by the trial court.... [T]he trial court properly construed the defendant's actions in this regard as a waiver of the right to counsel." *Id.* at 23, 555 P.2d at 977. In *United States v. Weninger*, 624 F.2d 163 (10th Cir.1980), the court of appeals "refused to permit [a] game to be played with the courts," and held that the defendant waived his right to counsel when he failed to engage an attorney after repeated admonitions by the trial court. The court of appeals noted that the defendant had ample

time before trial to retain counsel, and that the trial court properly denied the defendant's request for a four-month continuance.

In the present case, the defendants, who had previous encounters with the criminal justice system, first appeared before the court on January 4, 1982, at which time Milano advised the court that he and King had retained private counsel. Because their counsel could not attend, the court continued the case to January 18, 1982, for their appearance with counsel. On January 18, 1982, King and Milano again appeared unrepresented, and requested a preliminary hearing. The trial court set a preliminary hearing for February 5, 1982, and advised the defendants that they were entitled to appointed counsel upon proof of indigency, and that self-representation was dangerous. At the preliminary hearing, the trial court again warned the defendants against self-representation, and advised them of the procedures to obtain appointed counsel. The defendants declined appointed counsel, and the trial court advised them to see the eligibility investigator in the event a last-minute appointment became necessary.

On March 8, 1982, despite the court's careful admonitions and detailed directions, King and Milano appeared at trial without counsel. The court denied King's request for a continuance, and advised the defendants that they would have to proceed to trial unrepresented. The court was later forced to reschedule the trial for March 15, 1982, when the defendants temporarily left the courthouse during a recess. The defendants did not seek representation during their week's respite, and were eventually convicted on March 15.

I believe that the defendant's refusal in this case either to appear pro se or to take the steps necessary to retain private or appointed counsel resulted in a waiver of the defendant's sixth amendment right to counsel. The defendant could not bypass the eligibility procedure for appointment of counsel for indigent defendants and obtain a continuance by appearing at trial unrepresented. The trial court fully apprised the defendant of his alternatives two months before trial, and the defendant chose to ignore his options. The trial court committed no error by requiring the defendant to proceed with his case as it was docketed. The majority view, in my opinion, improperly permits a defendant to place the trial judge in a position where a failure to grant a further continuance after repeated directions as to the procedure for obtaining counsel constitutes a deprivation of the right to counsel. *See Kates v. Nelson,* 435 F.2d 1085, 1088–89 (9th Cir.1970).

Accordingly, I would affirm the court of appeals.[1]

I am authorized to say that Justice VOLLACK joins me in this dissent.

---

**1.** I would also affirm the trial court's denial of the defendant's request for a copy of the prelim-  inary hearing transcript.