The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Paul ALENGI, Defendant–Appellant.

No. 02CA0832.

Colorado Court of Appeals,
Div. I.

March 25, 2004.

Rehearing Denied July 1, 2004.*

Certiorari Granted June 27, 2005.

---

* Dailey, J., would GRANT Petition of Plaintiff-     Appellee.

Ken Salazar, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Keyonyu X O'Connell, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

Defendant, Paul Alengi, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of manufacturing a schedule II controlled substance, possession of a schedule II controlled substance, and controlled substance special offender. We affirm.

In early 2000, the police received information from several informants of illegal activity at defendant's home. The police obtained a search warrant, searched his home, and found chemicals and equipment used to manufacture methamphetamine, drug paraphernalia that tested positive for methamphetamine, and several guns. In April, defendant and his wife were charged with the above-mentioned offenses.

Defendant immediately retained private counsel, who filed several pretrial motions and attended pretrial hearings. However, on three separate occasions the following year, counsel moved to withdraw. At a hearing in October 2001, defendant's counsel told the court that he had not been paid and that defendant was "trying to play a game." He continued to assert that defendant was "being as uncooperative as humanly possible with us and with the court in an attempt to manufacture grievances and ineffective assistance claims after the fact in this case." Counsel noted that he had given defendant an indigency form to obtain an investigator at state expense, but defendant never filled it out.

The court granted counsel's motion. Defendant and his wife did not appear at that hearing, later asserting lack of notice.

At the next court appearance on November 2, 2001, which was set for a motions hearing, defendant appeared with a new attorney, who informed the court that he had not yet been retained. Defendant requested a continuance, which the court granted. The court specifically told defendant:

> If you do not have counsel retained and ready to go by then we are going to go ahead with the motions hearings, and you will be deemed to have waived counsel at least for the purposes of that hearing. That doesn't mean you can't get counsel later for trial. We will go ahead with that hearing whether or not [new counsel] or any other counsel can be present. Do you understand?

Defendant answered affirmatively.

On November 16, defendant appeared without counsel. When asked by the court about his lack of counsel, defendant responded that he had not yet paid a retainer, but he had the money, "[he] just hadn't converted it and [was] unable to come up with that as of this morning." Defendant asked for more time to retain counsel. The court asked both defendants how much time would be necessary to "get your finances liquid enough to hire your attorneys," to which they responded, "within two weeks."

The court then gave defendant an advisement under *People v. Arguello*, 772 P.2d 87 (Colo.1989). As pertinent here, the court specifically advised defendant that he had the right to an attorney; that if he could not afford an attorney, one would be provided free of charge; and that the court would appoint counsel if he wanted an attorney. The court asked defendant whether he was requesting the court to appoint counsel for him and whether he was "saying [he was] indigent and entitled to court-appointed counsel." Defendant said no. Finally, the court asked defendant whether he "agree[d] [he was] not entitled to court-appointed counsel." He responded, "That's correct."

The court told defendant that if he did not obtain counsel, "I will deem that a waiver of all these rights and I will deem that an election on your part to go forward without counsel. Is that very, very clear?" After defendant indicated his understanding, the court continued the matter until November 26.

On November 26, however, defendant still did not have counsel. He advised the court that he had raised almost $5,000 and could sell other assets to obtain more. The court reminded defendant that the failure to hire counsel would amount to a waiver of the right to counsel, but gave him another week to appear with an attorney. Defendant stated he understood and agreed with the court's ultimatum.

On December 3, defendant again appeared without counsel. This time, he told the court that he had hired an attorney and assured the court that counsel would enter an appearance before December 14. The court then asked defendant to appear on December 5 with counsel and asked the prosecutor to contact counsel for defendant to set a motions hearing date.

However, on December 5, defendant appeared without counsel. The prosecutor told the court she had contacted the attorney defendant said represented him, but the attorney told her that defendant had not delivered the promised retainer. Defendant indicated he had sold some merchandise, but the "mail was slow" in delivering the payment. The court then set the motions hearing for December 13, advising defendant that the hearing would go forward on that day whether he had counsel or not.

On December 13, defendant again appeared without counsel. He stated he had no intention of representing himself and said that he had a check representing liquidation of assets "in the bank but the thing is they won't release that check" for ten days.

The court reviewed the history of the case, reminding defendant and his wife that they had received five continuances to obtain counsel, but had failed to do so. Defendant and his wife again represented that the bank was holding their funds, and they asserted that they had always paid their attorneys and expert witnesses. Noting defendant's previous conduct and the *Arguello* advisement, the court determined that a valid implied waiver of counsel had occurred and proceeded to determine pending motions.

On the trial date, January 8, 2002, defendant again appeared without counsel. He and his wife stated that they did not want to proceed pro se and had been trying to convert assets to cash, but had not yet been able to do so. They did not mention the money they told the court on December 13 that the bank would release after ten days. The court again concluded an implied waiver of counsel had occurred.

## I.

Defendant contends that the trial court erred when it determined that he had waived his Sixth Amendment right to counsel. Specifically, defendant argues that the trial court deprived him of his right to counsel because it failed to inquire into his financial condition and, therefore, improperly forced him to proceed to trial pro se. We disagree.

■ Whether a waiver of counsel is effective presents a mixed question of fact and law that we review de novo. In ascertaining the validity of a waiver, we look at the totality of the circumstances. *People v. Stanley*, 56 P.3d 1241 (Colo.App.2002).

■ The assistance of counsel is constitutionally guaranteed and is essential to a fair trial. A defendant is entitled to court-appointed counsel if he or she lacks the necessary funds to retain competent counsel. However, a nonindigent defendant is not entitled to a court-appointed attorney and must, if he or she wishes to have the assistance of counsel, retain counsel at his or her own expense. *King v. People*, 728 P.2d 1264 (Colo.1986). The initial burden of establishing indigency is on the defendant. *Nikander v. Dist. Court*, 711 P.2d 1260 (Colo.1986).

■ A defendant may waive the assistance of counsel either expressly or impliedly. In an implied waiver, the defendant may not have expressly chosen to forgo the assistance of counsel, but by his or her conduct, is deemed to have forfeited it. When assessing the validity of a waiver, courts indulge every reasonable presumption against a waiver. *People v. Arguello, supra.*

■ Accordingly, a court must make a careful inquiry of a defendant who, having previously indicated a desire to be represented, appears without counsel. Thus, if the court has reason to believe a defendant is unable to afford counsel, the court has a duty to inquire into the defendant's financial condition, understanding of the right to counsel, and desires regarding legal representation before it requires the defendant to proceed to trial pro se. *See People v. Arguello, supra* (listing advisement factors); *King v. People, supra* (no valid waiver when a defendant who had sought services of private counsel and public defender's office appeared at trial without an attorney).

■ This duty to inquire, however, "does not require the trial court to maintain a continuing vigilance over the financial affairs of one accused of crime in order to ferret out his [possible poverty]." *Allen v. People*, 157 Colo. 582, 591, 404 P.2d 266, 271 (1965); *see People v. Litsey*, 192 Colo. 19, 555

P.2d 974 (1976)(by refusing appointed counsel and advising the court that he intended to retain a private attorney, defendant waived the right to counsel when he appeared at trial unrepresented). Furthermore, a defendant may not manipulate the right to counsel in a manner that will impede the effective and efficient administration of justice. *See United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1214 (3d Cir.1969); *see also United States v. Weninger*, 624 F.2d 163, 167 (10th Cir.1980)(defendant waived right to counsel by failing to engage attorney after repeated admonitions by the court).

■ Here, the record supports the trial court's finding of an implied waiver of counsel. Indeed, the record overwhelmingly indicates that defendant was trying to manipulate his right to counsel to indefinitely delay his prosecution.

Specifically, the record indicates that defendant's original counsel withdrew because defendant was being as "uncooperative as humanly possible" and "playing games with the system," and at each of numerous court appearances subsequent to this withdrawal, defendant repeatedly provided different reasons for not obtaining counsel. We find it important that the record also indicates that defendant never asserted to the trial court that he could not afford an attorney or that he wanted an attorney to be appointed for him. To the contrary, when the court specifically inquired as to his indigency during a full *Arguello* advisement, defendant explicitly rejected the suggestion of court-appointed counsel, telling the court that he was not indigent and did not want an attorney appointed to represent him free of charge.

Despite his course of manipulative conduct and explicit assertions that he did not want counsel appointed for him, defendant maintains nevertheless that the trial court should have undertaken a more intensive inquiry in finding a waiver of the right to counsel. Accordingly, defendant now asserts that the trial court should have inquired as to whether he was eligible to have counsel appointed for him and, if not, whether he had been reasonably diligent in his attempt to obtain counsel and whether the absence of counsel was attributable to reasons beyond his control. We disagree.

The court had ample evidence to conclude that defendant did not want appointed counsel. Defendant explicitly had been advised that he could have a court-appointed attorney if he could not afford to hire one, and he was clearly not interested in that alternative. Moreover, the court had sufficient information before it to conclude that defendant was not indigent. As stated by the dissent in *People v. Alengi*, —— P.3d ——, 2004 WL 583597 (Colo.App. No. 02CA0830, Mar. 25, 2004)(Casebolt, J., dissenting) (*Alengi I*), "Surely the trial court may take at face value a competent individual's assertion that [he] is *not* indigent, especially when, as here, that individual has already received an appropriate indigency form and fails to return it or apply for appointed counsel." Indeed, to require a trial court to ignore a defendant's otherwise knowing and intelligent responses renders an *Arguello*-like colloquy a meaningless exercise. *Cf. People v. Rawson*, 97 P.3d 315 (Colo.App.2004)(finding no valid waiver of right to counsel when defendant had known mental condition and no *Arguello* advisement was given).

Furthermore, the court had sufficient information to conclude that defendant's failure to obtain counsel was a situation of defendant's own making. The court had already been alerted by prior counsel that defendant was "playing games with the system," and defendant's course of conduct was completely consistent with this assertion.

Thus, reading the record as a whole, we conclude that it fully supports the trial court's conclusions that, regardless of his financial status, defendant did not want a court-appointed attorney, that defendant had been given ample opportunity to obtain private counsel, and that consequently, by his behavior, defendant forfeited his right to counsel. *See People v. Litsey, supra*, 192 Colo. at 23, 555 P.2d at 977 ("[T]he defendant made no effort to retain counsel after being told of all his options by the trial court. . . . [T]he trial court properly construed the defendant's actions in this regard as a waiver of the right to counsel."); *see also United States v. Weninger, supra*, 624 F.2d at 167

(the court "[refuses] to permit this type of game to be played with the courts").

We recognize that in *Alengi I,* also announced today, a majority of a division of this court has reached a contrary conclusion. For the reasons stated in this opinion, we decline to follow it. *See* § 13–4–106, C.R.S. 2003 (court of appeals does not have *en banc* authority and is required to hear and determine cases in divisions of three). However, because of the frequency with which this issue arises, and to prevent further instances of possible manipulation of the right to counsel, a bright line rule, perhaps set forth in the Colorado Rules of Criminal Procedure, might be helpful. Such rule could require that, after insistence on representation and a specified number of subsequent appearances without counsel, a defendant not previously evaluated for eligibility for court-appointed counsel be automatically referred by the trial court to the public defender's office for such an evaluation. We suggest this procedure because the General Assembly has already determined that it is a defendant's obligation in the first instance to request representation by the public defender's office, § 21–1–103(1)(a), C.R.S.2003, and because the public defender's office is better equipped than busy trial courts to accurately evaluate eligibility for court-appointed counsel, particularly with recalcitrant defendants. Even under those circumstances, however, should a defendant refuse to promptly submit the appropriate forms, he or she should be deemed to have forfeited his or her right to counsel.

## II.

Defendant also contends that, because he was forced to proceed pro se, he was unable to effectively represent himself at the motions hearing, during trial, and at the jury instruction conference where he failed to give a theory of the defense instruction. He asserts that these mistakes amounted to a denial of due process. We are not persuaded.

■ "[A]n accused who elects to proceed *pro se* relinquishes many of the traditional benefits associated with the right to counsel, including the Sixth Amendment right to the effective representation of counsel." *Downey v. People,* 25 P.3d 1200, 1203 (Colo.2001).

As such, defendant subjected himself to the same rules, procedures, and substantive law applicable to a licensed attorney. *People v. Gorman,* 983 P.2d 92, 94 (Colo.App.1998), *aff'd,* 19 P.3d 662 (Colo.2000).

■ We recognize that there may be circumstances where a pro se defendant's performance reaches such a level of ineptitude as to demonstrate a fundamental inability to provide any meaningful representation in his defense. However, from our review of the record, we conclude that defendant's performance, both before and during trial, was not so inept. *See People v. Romero,* 694 P.2d 1256, 1265 (Colo.1985).

## III.

■ Defendant next contends that his due process rights were violated when the trial court allowed irrelevant and prejudicial testimony. We disagree.

To support the veracity of the search warrant, the People called an informant as a witness. As a basis for her knowledge of defendant, the witness testified that her twenty-one-year-old daughter was addicted to methamphetamines and that she had dropped her daughter off at defendant's home several times. She further testified about the details of her daughter's drug habit and its effect on their family. She also related that her daughter was intimate with defendant.

We reject defendant's assertion that this testimony regarding the side effects of methamphetamine, including the hardship to the family and the daughter's relationship with him, was so irrelevant and prejudicial as to require reversal.

■ A trial court's rulings on evidentiary issues are reviewed for an abuse of discretion. A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002).

■ When no contemporaneous objection is made to the asserted error, appellate review is limited to determining whether the error rises to the level of plain error. *Wil-*

*son v. People,* 743 P.2d 415, 419 (Colo.1987). Plain error has occurred if, after a review of the entire record, an appellate court can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Woellhaf,* 87 P.3d 142 (Colo.App.2003).

Here, even if we were to assume that the witness's testimony was irrelevant, its admission does not rise to the level of plain error. In light of the overwhelming, uncontroverted evidence of defendant's guilt, we cannot conclude that the witness's testimony undermined the fairness of the trial or cast doubt on the reliability of the conviction.

### IV.

Finally, defendant contends that because of certain incidents of prosecutorial misconduct, his right to a fair trial was denied. We disagree.

Here, during closing argument, the prosecutor stated, "I brought you a number of people over the last few days that testified truthfully and honestly to the best of their recollections and there is no reason to doubt their credibility." During rebuttal closing argument, the prosecutor referred to defendant's testimony as "incredible."

While it is improper for counsel to express a personal belief in the truth or falsity of testimony, during final argument counsel may properly point to circumstances that may raise questions or cast doubt on a witness's testimony, and counsel may also draw reasonable inferences from the evidence as to the credibility of witnesses. *Wilson v. People, supra,* 743 P.2d at 418.

Because defendant did not object to the comments during closing argument, we review for plain error. A prosecutor's misconduct is plain error if it is flagrant or glaringly or tremendously improper. *People v. Joyce,* 68 P.3d 521, 525 (Colo.App.2002).

Here, the prosecutor commented on the credibility of the prosecution's witnesses when she was addressing the credibility instruction to the jury. And "[c]ounsel can with propriety comment on how well and in what manner a witness measures up to the tests of credibility set forth in the instruction." *People v. Constant,* 645 P.2d 843, 845–46 (Colo.1982). Additionally, when the prosecutor stated that defendant's testimony was incredible, she was articulating discrepancies in the evidence, not her personal opinion. *See People v. Carrier,* 791 P.2d 1204, 1206 (Colo.App.1990)(prosecutor's remarks were tantamount to a comment on the circumstances casting doubt on the defendant's testimony).

Further, defendant asserts that the prosecutor impermissibly appealed to the jury's sense of community responsibility by implying, in her rebuttal closing argument, that defendant's drug manufacturing will have a "ripple effect" throughout the community. Again, in light of the overwhelming evidence of defendant's guilt, the prosecutor's remarks had little, if any, effect on the reliability of defendant's conviction. *See People v. Joyce, supra,* 68 P.3d at 525; *People v. Kenny,* 30 P.3d 734, 741 (Colo.App.2000)(prosecutor's comment that justice should be brought to Colorado was not plain error).

The judgment is affirmed.

Judge LOEB concurs.

Judge DAILEY dissents.

Judge DAILEY dissenting.

I respectfully dissent.

"Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984)(quoting Schaefer, *Federalism and State Criminal Procedure,* 70 Harv. L.Rev. 1, 8 (1956)).

" '[F]orcing a criminal defendant to go to trial pro se' without conducting an appropriate inquiry into his financial ability to afford counsel 'constitutes a denial of [a] defendant's sixth amendment right to counsel.' " *United States v. Barcelon,* 833 F.2d 894, 896–97 (10th Cir.1987)(quoting *United States v.*

*Harris,* 707 F.2d 653, 662 (2d Cir.1983)); *see also King v. People,* 728 P.2d 1264, 1270 (Colo.1986)("before forcing the defendant to trial without the benefit of counsel, [the trial court] had the duty to make a careful inquiry about the defendant's financial condition, the defendant's understanding of his right to counsel, and his desires regarding legal representation").

As noted by the majority, trial courts need not "maintain a continuing vigilance over the financial affairs of one accused of crime in order to ferret out his [possible] poverty." Rather, once the trial court is satisfied that a defendant is able to secure the services of an attorney, the burden rests on that defendant "to apprise the court of any change in circumstances resulting in indigency." *Allen v. People,* 157 Colo. 582, 591, 404 P.2d 266, 271 (1965).

Here, defendant's retained counsel withdrew, in part at least, because of defendant's inability or unwillingness to pay him. Following counsel's withdrawal, the trial court inquired only in the most general terms about whether defendant was indigent and in need of court-appointed counsel. For the next two and a half months, the court simply directed defendant to obtain or proceed without counsel.

Throughout that period defendant maintained that he wanted the assistance of counsel, but was unable to obtain it for a variety of reasons relating to an inability to liquidate assets or come up with cash sufficient to afford separate counsel for himself *and* his codefendant wife: his customers had not paid him; their payments had not arrived in the mail; the bank would not release his funds; he had not yet cleared out his storage bins; and his friend had not come through with some cash.

I share the majority's concern about a defendant's abusing the right to counsel to manipulate trial court proceedings. Indeed, I do not discount the possibility that defendant was attempting to do that here. However, I find significant that (1) nothing in the record indicates that defendant understood the concept of indigency; and (2) the judge who ultimately required defendant to go forward without counsel was not the same judge

who, during the course of the five prior hearings, accepted defendant's assertions of inability to afford counsel as grounds to continue the case.

Because the record was not further developed, I cannot be sure that defendant was manipulating the system. And because of the importance to the right to counsel, I would resolve any doubts in favor of a defendant's ability to exercise that right. *See People v. Arguello,* 772 P.2d 87, 93 (Colo. 1989)("Courts must indulge every reasonable presumption against finding a waiver of the fundamental right to counsel.").

In my view, defendant's proffer of a series of financial reasons for his inability to retain an attorney was sufficient to apprise the court that he may have become indigent, despite how he labeled or considered himself. And although defendant never requested the assistance of appointed counsel, it is clear that he did not want to proceed to trial pro se.

Consequently, when defendant appeared for trial and reported unsuccessful attempts to retain an attorney, the court had a duty to inquire into the specifics of his financial condition and determine whether he was eligible for the assistance of court-appointed counsel. *See Douglas v. Hendricks,* 236 F.Supp.2d 412, 429 (D.N.J.2002)("Once a defendant puts the court on notice of his inability to retain private counsel, the district court must, 'make further inquiry into the defendant's financial condition to ascertain whether he is entitled to have counsel appointed to represent him.'")(quoting *United States v. Martin–Trigona,* 684 F.2d 485, 490 (7th Cir. 1982)); *State v. Bush,* 97 Ohio App.3d 20, 26, 646 N.E.2d 193, 196 (1994)("[w]hen appellant stated that he had 'been trying to get the money together' to hire an attorney, appellant gave the court new information concerning his ability or inability to retain counsel," and the court was required to "inquire fully into the circumstances impinging on appellant's newly claimed inability to obtain counsel"); *State v. Dubrock,* 649 S.W.2d 602, 605 (Tenn.Crim.App.1983)(applying state statute: defendant "should have been afforded an indigency hearing when he put the trial court

on notice prior to trial that he was then unable to pay for a lawyer, even though he had previously retained an attorney").

Because the trial court made no such inquiry and determination before forcing defendant to proceed to trial pro se, I would reverse. *See United States v. Martin–Trigona, supra,* 684 F.2d at 490; *King v. People, supra,* 728 P.2d at 1270.