The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Nancy Aloha ALENGI, Defendant–
Appellant.

No. 02CA0830.

Colorado Court of Appeals,
Div. V.

March 25, 2004.

Rehearing Denied July 1, 2004.*

Certiorari Granted June 27, 2005.

* Casebolt, J., would GRANT.

Ken Salazar, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Jennifer L. Melton, Kim, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Nancy Aloha Alengi, appeals from the judgment of conviction entered on jury verdicts finding her guilty of possession of a schedule II controlled substance, § 18–18–405(1)(a), C.R.S.2003; manufacture of a schedule II controlled substance, § 18–18–405(2)(a)(I), C.R.S.2003; and special offender for possession of a deadly weapon, § 18–18–407(1)(f), C.R.S.2003. Defendant's principal contention on appeal is that the trial court erred in concluding that she impliedly waived her constitutional right to assistance of counsel. We agree and therefore reverse the judgment and remand for a new trial.

At the outset we recognize that another divided division of this court is simultaneously announcing *People v. Alengi*, 114 P.3d 11, 2004 WL 583608 (Colo.App. No. 02CA0832, Mar. 25, 2004), affirming the judgment of defendant's husband's conviction on the same record. We further recognize that another division of this court is simultaneously announcing *People v. Rawson*, 97 P.3d 315, 2004 WL 583739 (Colo.App. No. 02CA0527, Mar. 25, 2004), reversing a defendant's conviction and concluding, on different facts, that the trial court erred in not ascertaining whether the defendant was indigent before forcing him to trial without counsel.

In early 2000, the police received information from several informants of illegal activity at defendant's home. The police obtained a search warrant, searched the home, and found chemicals and equipment used in the manufacture of methamphetamine, drug paraphernalia that tested positive for methamphetamine, and several weapons. The police arrested defendant and her husband. Defendant admitted using methamphetamine, but denied manufacturing the drug.

Initially, defendant and her husband hired separate private counsel. Their respective counsel filed numerous pretrial motions and attended several pretrial hearings. Both counsel then filed motions to withdraw, explaining that defendant and her husband had been uncooperative and that a conflict of interest had arisen.

The trial court scheduled a conference on October 16, 2001 to discuss the motions to withdraw. During the conference, both attorneys asserted that they had not been paid for some time. Husband's attorney ex-

pressed his impression that the husband was "playing a game and trying to manufacture issues." Defendant's counsel stated that defendant had sent a check in payment of fees, but the check was dishonored because of insufficient funds. The trial court allowed counsel to withdraw, but reserved ruling on whether defendant and her husband had waived further assistance of counsel. Defendant and her husband did not appear at the conference and later alleged lack of notice.

On November 2, 2001, defendant appeared for a hearing on pretrial motions without counsel, but explained that she intended to hire counsel. Her husband appeared accompanied by counsel who had not entered, and ultimately did not enter, his appearance. The court continued the hearing until November 16 and admonished defendant as follows:

> And let me tell both Mr. and Mrs.... Alengi, if you do not have counsel retained and ready to go by then we are going to go ahead with the motions hearing, and you will be deemed to have waived counsel at least for the purposes of that hearing. That doesn't mean you can't get counsel later for trial. We will go ahead with that hearing whether or not [husband's counsel] or any other counsel can be present, do you understand?

Defendant answered in the affirmative.

On November 16, 2001, defendant again appeared without counsel. She explained that she and her husband had already spent lots of money on attorney fees, that new attorneys refused to attend the hearing without retainers, that they did not presently have sufficient funds for the retainers demanded by the attorneys, and they needed time to convert some assets into cash to pay the retainers. At the prosecutor's request, the trial court then gave defendant the advisement articulated by the supreme court in *People v. Arguello*, 772 P.2d 87 (Colo.1989), which is designed to assure that a defendant makes a knowing, voluntary, and intelligent waiver of counsel.

With respect to defendant's financial ability, the following exchange occurred during the *Arguello* advisement:

THE COURT: ... Do you and both of you understand that you have the right to be represented by counsel throughout these proceedings and that is individual counsel for each of you?

[DEFENDANT]: Yes, Sir.

. . . .

THE COURT: Do you understand that if you cannot afford an attorney one will be provided for you free of charge? By not affording an attorney you qualify for appointment of public defender or alternate counsel, do you understand that?

[DEFENDANT]: Yes, sir.

. . . .

THE COURT: Do you understand that I will appoint counsel if you want an attorney to represent you, do you understand that?

[DEFENDANT]: Yes, sir.

. . . .

THE COURT: Are you requesting the Court appoint counsel for you? Are you saying that you are indigent and entitled to court appointed counsel?

[DEFENDANT]: No, sir.

. . . .

THE COURT: Do you both agree you are not entitled to court appointed counsel?

[DEFENDANT]: That's correct.

At the close of the advisement, the trial court again admonished defendant and her husband that if they did not retain counsel the matter would go forward. The court also stated it would deem their failure to retain counsel as an election to go forward without counsel.

On November 26, 2001, defendant and her husband again appeared without counsel. They explained that while they had raised some money, they still did not have enough cash to pay the retainers and needed more time. The court set the next hearing for December 3, 2001.

On December 3, defendant and her husband once again appeared without counsel. They explained to the court that they had hired counsel and both attorneys would be at the final motions hearing on December 13, 2001.

At a December 5, 2001 hearing, defendant and her husband again appeared without counsel. The prosecutor informed the trial court that she had contacted the two attorneys defendant and her husband claimed represented them, but both attorneys denied representing defendant and her husband. Defendant explained that they still did not have enough cash to pay the retainers, but expected to get more money from a friend and retain counsel by December 13. Defendant's husband indicated that they had shipped "merchandise," but the customers "pay by e-mail or banks" and "[i]t has been slow because of the bombing."

At the December 13, 2001 hearing, defendant and her husband again appeared without counsel. They explained that they did not have money to pay the retainers, but had received funds in their bank and were waiting for the bank to make them available. They also stated that they had no intention of representing themselves at trial. The court reviewed the history of the case and found that they had impliedly waived their right to counsel by their conduct. The court then denied the pending motions that defendant's original counsel had filed months before.

On the trial date, January 8, 2002, defendant and her husband again appeared without counsel. Before the trial began, defendant and her husband explained that they had repeatedly attempted to convert assets into cash to afford counsel, and they also explained that they did not want to represent themselves because proceeding pro se would be harmful to them. The court found that defendant and her husband had waived their right to counsel and went ahead with the trial. Defendant and her husband were tried jointly, and the trial court advised them that an objection made by one of them would be treated as an objection by both defendants. Subsequently, the jury reached a verdict, and the judgment entered.

At the March 11, 2002 sentencing hearing, defendant appeared with counsel and was sentenced to eight years in the Department of Corrections. Defendant filed a timely motion for reconsideration upon which the trial court never ruled. Defendant filed a motion to proceed in forma pauperis on appeal, which the trial court granted, and appellate counsel was appointed.

■■■ The right to counsel is a fundamental right guaranteed by the Sixth Amendment. *People v. Woods*, 931 P.2d 530 (Colo. App.1996). However, a criminal defendant does not have an absolute right to counsel of his or her choice in all cases and may not manipulate that right to impede the efficient administration of justice. *People v. Barnes*, 636 P.2d 1323 (Colo.App.1981). As a corollary to the constitutional right to counsel, a defendant has the alternative right to self-representation. Colo. Const. art. II, § 16; *People v. Arguello, supra.*

■■■ Before a defendant is allowed or required to proceed pro se, he or she must effect a valid waiver of the right to counsel. A waiver is "an intentional relinquishment or abandonment of a known right or privilege." *King v. People*, 728 P.2d 1264, 1268 (Colo.1986)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)). A waiver may be express or implied, and a defendant's misconduct may result in a forfeiture of the right to counsel. *People v. Arguello, supra.* However, courts must indulge every reasonable presumption against waiver. *People v. Curtis*, 681 P.2d 504 (Colo.1984).

■■■ Whether a waiver is effective presents a mixed question of law and fact that we review de novo. *People v. Stanley*, 56 P.3d 1241 (Colo.App.2002). On appeal, we must not only look at the advisement, but also weigh the totality of the circumstances in ascertaining the validity of the waiver. *People v. Arguello, supra; People v. Stanley, supra.*

■■■ To support an implied waiver of the right to counsel, the record as a whole "must show that the defendant knowingly and willingly undertook a course of conduct that evinces an unequivocal intent to relinquish or abandon his right to legal representation." *King v. People, supra*, 728 P.2d at 1269; see also *People v. Stanley, supra.* In addition, the trial court must sufficiently advise the defendant about the dangers and disadvan-

tages of self-representation. *People v. Arguello, supra.*

In *King v. People*, the facts of which closely parallel the facts of this case, the defendant appeared several times without counsel, including at the preliminary hearing. The defendant asserted that he had hired counsel who was not available. On at least two occasions the trial court offered to appoint counsel. On one occasion the defendant indicated that he had contacted counsel, but was unable to pay the required retainer because he had suffered a heart attack and had been unemployed. Following the preliminary hearing, the trial court referred the defendant to an eligibility investigator and told him that the court could appoint counsel up to a certain date without disturbing the trial setting.

At the beginning of trial, the defendant indicated he could not pay the retainer until he received his income tax refund, he had not yet met with the public defender, and he was not prepared to proceed. The trial was continued for one week for scheduling purposes, and when the defendant next appeared without counsel he indicated that the public defender was to call the court that morning. The trial court stated that if the public defender arrived, he would be permitted to enter his appearance. The trial proceeded with the defendant present but not participating. In *King*, as here, the People relied on an implied waiver of counsel. In reversing the resulting conviction, the supreme court stated:

> The People basically rely on a theory of implied waiver, arguing that the defendant impliedly waived his right to counsel when he failed to comply with the trial court's procedures for an eligibility examination and that his last minute request for counsel on the day of trial was nothing short of a calculated effort to forestall the trial. . . .

> What the record demonstrates is that the defendant repeatedly sought the assistance of counsel, first private counsel and, when that proved unavailing, the services of the public defender's office. Despite the defendant's unequivocal desire for counsel, the trial court remained inflexibly unwilling to engage in any inquiry about the defendant's financial condition and his desire for a court-appointed attorney. While an efficient docket is certainly a legitimate concern of a trial court, the interest in judicial efficiency cannot override the fundamental right of an accused to be represented by counsel.

*King v. People, supra,* 728 P.2d at 1269–70.

In contrast, in *People v. Arguello,* an indigent defendant rejected the services of the public defender, and private counsel was appointed at public expense. But at the next hearing the defendant rejected the private counsel because "he lacked sufficient ability and experience" and his dress was "third rate." *People v. Arguello, supra,* 772 P.2d at 89. The trial court then appointed a second private counsel who was permitted to withdraw because of an alleged conflict. The trial court concluded that the defendant had waived his right to counsel despite his protestations to the contrary. The defendant went to trial without counsel over his continuing objection.

The supreme court reversed the resulting conviction, quoting with approval *King v. People.* The court then formulated an inquiry to be undertaken when a defendant appears without counsel "and indicate[s] he desire[s] to proceed without assistance of counsel." *People v. Arguello, supra,* 772 P.2d at 98.

Most of the cases in which an implied waiver of counsel has been found have facts which parallel *People v. Arguello* and not *King v. People.* That is, the defendant has court-appointed counsel and constantly complains about counsel's competence or attention to the case, or alleges a conflict, real or imagined, so that the trial court frequently substitutes appointed counsel. *See, e.g., People v. Garcia,* 64 P.3d 857 (Colo.App.2002); *People v. Mossmann,* 17 P.3d 165 (Colo.App. 2000); *People v. Smith,* 881 P.2d 385 (Colo. App.1994); *People v. Haynie,* 826 P.2d 371 (Colo.App.1991).

Here, however, the facts more closely parallel *King v. People,* in that no counsel had been appointed and defendant repeatedly indicated that she wanted and needed counsel, but was unable to pay the retainer or fees.

■ The trial court should appoint counsel to represent a defendant if, through the defendant's affidavit or testimony, or the court's investigation, the court determines that the defendant is financially unable to obtain counsel. Crim. P. 44; *Allen v. People*, 157 Colo. 582, 404 P.2d 266 (1965). Before forcing a defendant to trial without the benefit of counsel, a trial court has the "duty to make a careful inquiry about the defendant's financial condition," in addition to inquiring into the defendant's understanding of his or her right to counsel and wishes regarding legal representation. *King v. People, supra*, 728 P.2d at 1270; *see Allen v. People, supra*, 157 Colo. at 590, 404 P.2d at 271 (the trial court's inquiry into a defendant's financial ability to employ private counsel may be pertinent); *see also Wood v. United States*, 389 U.S. 20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967); *United States v. Moore*, 671 F.2d 139 (5th Cir.1982); *United States v. Martin–Trigona*, 684 F.2d 485 (7th Cir.1982); *Douglas v. Hendricks*, 236 F.Supp.2d 412 (D.N.J.2002); *DiBartolomeo v. State*, 450 So.2d 925 (Fla.Dist. Ct.App.1984); *State v. Dubrock*, 649 S.W.2d 602 (Tenn.Crim.App.1983). The court, however, is not required to "maintain a continuing vigilance over the financial affairs" of the defendant to determine whether she is indigent. *Allen v. People, supra*, 157 Colo. at 591, 404 P.2d at 271.

In addition, the term "indigent" for purposes of appointment of counsel is a term of art, that is, it has a very specific and highly technical meaning. Therefore, the fact that defendant and her husband said they were not indigent is, in our view, of very little or no consequence.

■ A defendant does not have to be destitute; it is sufficient that he or she "lack the necessary funds, on a practical basis, to retain competent counsel." *Nikander v. Dist. Court*, 711 P.2d 1260, 1262 (Colo.1986); *see also People v. Castile*, 71 Ill.App.3d 728, 28 Ill.Dec. 259, 390 N.E.2d 426 (1979).

[T]he trial judge must consider the defendant's complete financial situation by balancing assets against liabilities and income against basic living expenses. Factors to be considered include whether the defendant has any dependents, whether he is employed, income from all sources, real and personal property owned, extent of any indebtedness, necessary living expenses, and the Eligibility Income Guidelines which reflect the current Federal Poverty Guidelines.

*Nikander v. Dist. Court, supra*, 711 P.2d at 1262.

■ Throughout defendant's pro se court appearances, the court failed to inquire into defendant's financial condition and her ability to retain private counsel despite the fact that it was an obvious issue. The trial court seemed to assume that defendant could afford private counsel, despite her repeated statements that she could not convert assets to cash to pay a retainer. In addition, the initially retained counsel, upon withdrawal, informed the trial court that defendant had paid him with a check that was returned for insufficient funds. These statements and representations put the trial court on notice that defendant could not afford private counsel and may well have been eligible for court-appointed counsel.

We recognize that defendant and her husband may have been trying to manipulate the trial court for some real or imagined advantage. However, defendant and her husband insisted throughout the proceedings that they wanted to be, and recognized the importance of being, represented by counsel. They also consistently indicated that they had searched for counsel and were unable to pay the requested retainers and fees. Indeed they were initially represented by private counsel, who had never been paid, withdrew because they were not being paid, and husband subsequently appeared with other private counsel who was never retained.

Under these circumstances, the issue of manipulation cannot be resolved without an inquiry into defendant's actual financial circumstances and eligibility for court-appointed counsel. In our view, on this record, the trial court was obligated to undertake such an inquiry. Here, unlike in *King v. People*, the trial court never advised, or even suggested, that defendant should apply for court-appointed counsel. And, unlike in *Peo-*

*ple v. Arguello,* the trial court never appointed counsel.

Courts must indulge every reasonable presumption against finding a waiver of counsel. *See People v. Arguello, supra.*

Further, in our view, there is a disconnect between the *People v. Arguello* advisement and the facts of that case and this case. That is, the *Arguello* advisement appears to be tailored for the defendant who announces that he or she wants to proceed without counsel. It does not address the defendant who is, or is about to, impliedly waive, forfeit, or abandon the right to counsel by his or her conduct, protestations to the contrary notwithstanding.

In addition, because of the inherent conflict in representing codefendants, *see People v. Edebohls,* 944 P.2d 552 (Colo.App.1996), defendant and her husband were, for all practical purposes, faced with hiring two attorneys, not one.

Finally, when defendant filed a motion to proceed in forma pauperis and for appointment of appellate counsel, the court found her eligible. While we concede that this appointment is not necessarily inconsistent because defendant then was, or was to be, incarcerated, it is incongruous and causes us to question whether defendant was eligible for court-appointed trial counsel.

The record does not show that the trial court conducted a careful inquiry into defendant's financial ability to retain counsel, even though the trial court adequately advised defendant of her right to counsel pursuant to *People v. Arguello.* Therefore, we conclude that defendant did not make a knowing, voluntary, and intelligent waiver of her right to counsel.

We need not address the remaining issues on appeal because they are unlikely to arise on retrial.

Accordingly, the judgment is reversed, and the case is remanded to the trial court for a new trial.

Judge PICCONE concurs.

Judge CASEBOLT dissents.

Judge CASEBOLT dissenting.

Because, in my view, the trial court correctly concluded that defendant impliedly waived her right to counsel, I respectfully dissent.

A waiver of counsel may be implied from the circumstances of the case. An implied waiver has been described as a forfeiture of the right to counsel, rather than a deliberate and informed decision to waive that right. *People v. Arguello,* 772 P.2d 87 (Colo.1989).

A defendant may not manipulate the right to counsel in a manner that will impede the efficient and effective administration of justice. *See United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1214 (3d Cir.1969).

In *Allen v. People,* 157 Colo. 582, 591, 404 P.2d 266, 271 (1965), the court held that a defendant, who was advised three times of his right to appointed or retained counsel, waived his right to counsel when he appeared at trial unrepresented. The court rejected the defendant's contention that the trial court should have inquired into his indigency and should not have tried him without counsel:

> The rule does not require the trial court to maintain a continuing vigilance over the financial affairs of one accused of crime in order to ferret out his poverty potential.... [T]he trial court fully advised the defendant of his right to be represented by an attorney, and ... determined that he was able to secure the services of an attorney. Ample time was given to prepare for trial. Thereafter, the burden rested upon the defendant to apprise the court of any change in circumstances resulting in indigency.

In *People v. Litsey,* 192 Colo. 19, 555 P.2d 974 (1976), the defendant refused appointed counsel and advised the trial court that he intended to retain a private attorney. The defendant failed to retain counsel and appeared at trial unrepresented. In affirming his conviction, the supreme court said, "[T]he defendant made no effort to retain counsel after being told of all his options by the trial court.... [T]he trial court properly construed the defendant's actions in this regard as a waiver of the right to counsel." *People*

*v. Litsey, supra,* 192 Colo. at 23, 555 P.2d at 977.

In *United States v. Weninger,* 624 F.2d 163, 167 (10th Cir.1980), the court "refused to permit [a] game to be played with the court," and held that the defendant waived his right to counsel when he failed to engage an attorney after repeated admonitions by the trial court. The court noted that the defendant had ample time before trial to retain counsel and that the trial court properly denied his request for a four-month continuance.

In my view, even indulging a reasonable presumption against waiver, the totality of the circumstances supports the trial court's finding of an implied waiver and leads to the conclusion that defendant was attempting to manipulate the right to counsel to impede the efficient and effective administration of justice.

This case had been pending for almost two years at the time of trial. At the hearing on the motion to withdraw, previous counsel opined that defendant and her husband were "playing games with the court." Her counsel noted that he had given her an affidavit for indigency to use in procuring an investigator, but she had failed to return it.

At the November 16 hearing, defendant responded that she had not had enough time to convert assets to cash, but that "we have the money." She represented that she would "absolutely" be able to get an attorney and told the court she could get her finances liquid enough to hire an attorney within two weeks.

On November 26, defendant told the court that she had raised $5,000 but needed "another week" to hire counsel. On December 13, defendant's husband said that they had a check representing liquidation of assets "in the bank," but she inexplicably said nothing about those funds or their use when she appeared for trial on January 8.

At no time did defendant indicate she could not afford to retain counsel. To the contrary, she affirmatively stated that she was not indigent and that she did not want an attorney appointed to represent her free of charge.

Defendant was repeatedly told, and always acknowledged, that her failure to have an attorney present at the numerous hearings would result in a forfeiture of her right to counsel. Moreover, defendant received a sufficient advisement under *People v. Arguello, supra.*

The majority asserts that the facts here are closely akin to those in *King v. People,* 728 P.2d 1264 (Colo.1986), in which the court reversed a conviction because the defendant did not forfeit his right to counsel. I disagree.

In *King,* the defendant initially represented he had hired an attorney, but later appeared several times without counsel. Thereafter, the defendant indicated he was unable to pay the required retainer because he had suffered a heart attack and had been unemployed. The court referred the defendant to an eligibility investigator for the public defender, but thereafter declined a request for a continuance so that the defendant could pursue appointment of the public defender. On appeal, the supreme court noted that the defendant was unable to pay private counsel and specifically had sought the services of the public defender. It noted that the trial court had been unwilling to engage in any inquiry about the defendant's financial condition.

Here, in contrast, defendant never said she was unable to pay an attorney. The court specifically inquired concerning defendant's financial position during the *Arguello* advisement, but she did not request the services of the public defender and affirmatively told the court she was not indigent and was not entitled to free court-appointed counsel. Hence, *King* is inapposite. I am persuaded that *Allen, Litsey,* and *Weninger* are more applicable and instructive here.

While I agree that a court must make an inquiry about the defendant's financial condition before finding an implied waiver, I cannot fault the trial court here for failing to cross-examine defendant concerning her financial condition, as the majority would require. A court is not required to maintain continuing vigilance over the financial affairs of a defendant. *Allen v. People, supra.*

Because defendant never claimed or asserted indigency, the majority's recitation of indigency standards is irrelevant. Surely the trial court may take at face value a competent individual's assertion that she is *not* indigent, especially when, as here, that individual has already received an appropriate indigency form and fails to return it or apply for appointed counsel. Indeed, it is the defendant's responsibility in the first instance to request representation by the public defender's office, § 21–1–103(1)(a), C.R.S.2003, and even though the court may appoint counsel of its own motion, the court may not appoint a public defender if the defendant does not fall within the fiscal standards or guidelines established by the supreme court. Section 21–1–103(1)(b), C.R.S.2003.

The majority asserts that, because defendant sought and obtained appointed counsel for sentencing and this appeal, that circumstance indicates her indigency and eligibility for counsel at the trial level. This assertion misses the mark. Defendant bears the responsibility to request and justify appointment of counsel, *see Allen v. People, supra,* and I see no basis to instruct the trial court to disregard her denial of indigency. Indeed, had the trial court forced appointed counsel upon defendant, we would now be faced with an appeal asserting the court denied defendant her right to select counsel of her choice.

The trial court, in my view, was justified in believing that defendant could afford private counsel and did not err in failing to inquire further. *See Allen v. People, supra* (court's duty to assign an attorney to represent a defendant arises only after defendant shows he is indigent and unable to secure counsel from his own resources; after court determines a defendant can afford an attorney initially, the burden rests upon the defendant to apprise the court of any change in circumstances resulting in indigency).

For these reasons, I would affirm the judgment.